561 So.2d 837 (1990)
Henry Edwin ATKINS and Harold William Atkins, Appellees,
v.
Opal Atkins ROBERTS, Appellant.
No. 21497-CA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
Dawkins, Coyle and Carter by Michael S. Coyle, Ruston, for appellees.
Jack R. Gamble, Jr., Mansfield, for appellant.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Defendant, Opal Matthews Atkins Roberts, appealed the judgment of the trial court in favor of plaintiffs, Henry and Harold Atkins, annulling the last will and testament of F.E. Atkins. Finding that the trial court was not clearly wrong in holding that testator lacked testamentary capacity but erred in the assessment of costs, we *838 amend the judgment and as amended, affirm.
Assignments of Error
On appeal, defendant asserts the following assignments of error:
1) The trial court erred in finding the deceased could not read and accordingly could not make a valid will under the provisions of La.R.S. 9:2442;
2) The trial court erred in holding that an ability to read is required to make a valid will when it had been proven the proposed will had been read aloud to testator and he knew the contents thereof when it was executed; and,
3) The trial court erred in assessing court costs to defendant individually when her actions were done in her capacity as testamentary executrix of the succession and thus costs should have been assessed against the estate.
Factual Context
On April 3, 1984 F.E. Atkins executed a last will and testament bequeathing to his second wife, Opal Roberts, a lifetime usufruct over his entire estate and bequeathing to his two children from a previous marriage, Henry and Harold Atkins, his entire estate subject to the spousal usufruct. Roberts was named executrix of the estate without bond. The testament stated it was executed pursuant to La.R.S. 9:2442 and 2443 and consisted of a one page typewritten document signed by the testator, a notary public and two witnesses. The testator died on August 24, 1985.
On July 24, 1986 defendant filed a petition for probate of the statutory testament requesting it be probated and that she be named executrix of the estate. On that same date, the trial court found the testament of the deceased in statutory form was proven and ordered the testament executed according to law. Defendant was duly qualified as executrix of the estate.
On March 3, 1989 plaintiffs instituted this action to annul the testament, alleging the purported testament in statutory form was a nullity because the deceased-testator could not read. Plaintiffs contended the testament was not in proper form for execution by a person who could not read because it was not witnessed by three witnesses and did not contain an attestation clause certifying it had been read to the testator by the notary in the presence of three witnesses who followed a reading of the testament on copies provided to them. Therefore, plaintiffs asserted the testament should be declared null and the court order probating the testament and appointing defendant as executrix should be recalled.
The testimony of the witnesses at the hearing on the rule centered upon whether the testator could read and established the testator was a contractor with little formal education.
Plaintiffs, Henry and Harold Atkins, testified that their father had never been able to read. Plaintiffs indicated the testator was "good" with figures and numbers but could not read. The testator could "read" blueprints involved in his work as they consisted primarily of figures but could not read the written specifications. Both sons had assisted their father in his work and testified they had read specifications for him. Further, the testator had requested menus and newspaper articles be read to him. The plaintiffs testified their mother had also read to the testator during their marriage. The testimony established testator could sign his name and was taught to do so by his first wife. The testator hid his inability to read as he was ashamed and had indicated he had not completed the first grade.
The brother-in-law of defendant, M.J. Captain, testified he was a neighbor of the testator for a period in excess of ten years before his death. Captain testified the testator could not read by his own admission and had demonstrated his inability to read when he handed a newspaper to Captain and asked him to read it to him. Captain testified that when he questioned testator, the testator indicated he had little education and could not read. From time to time, the testator would ask Captain to read something for him and seemed embarrassed by his illiteracy. Captain stated he *839 had never seen the testator write anything other than his name.
Hazel Captain, sister of defendant, testified she had known the testator for approximately 22 years and he had never demonstrated an ability to read or write. She testified testator had asked her to help him find his pain medication in the medicine cabinet because he could not read the labels on the medicine bottles in order to identify the correct medication.
Mr. & Mrs. Emory Matthews, brother and sister-in-law of defendant, testified that the testator could not read and they had never seen the testator read anything. Mr. Matthews worked with the testator for approximately 10 to 12 years and testified he had never seen the testator write a check. When in restaurants, Matthews stated the testator would ask what was on the menu or would simply order the same thing as the others.
The defendant testified that she and the testator were married for approximately 20 years, but during that time she had never heard the testator read anything aloud. The defendant would read letters to the testator, but testified she had seen him pick the letters up afterwards and look at them. She admitted she had never seen the testator read a menu but stated the testator always knew what he wanted. The defendant kept all of the business records and did the payroll. Defendant testified the testator would occasionally fill in the employees' time on the time records next to the names she had written. She had observed the testator looking at magazines which he appeared to be reading as well as examining his blueprints and specifications. Defendant was unable to produce any document she had seen the testator write other than his signature.
Jack Averett, the notary public on the testator's will, testified he had read the will aloud to the testator as a courtesy because the testator had one or two questions and indicated there were some parts he wanted to clarify. Averett stated the testator appeared to know what he was doing when the will was executed and he always asked people before they signed a document if they had read and understood what they were signing. Averett made no determination of whether the testator could read prior to executing the will and had no personal knowledge of the testator's ability to read.
Henry Thomas, a former employee of the testator, testified he had known the testator for approximately 20 years. He stated the testator had read blueprints and specifications to him and would then tell Thomas what kind of fixtures went into the building. Thomas testified the testator would appear to be reading the blueprints and specifications and would point things out. Based upon his observations of the testator, Thomas did not have any doubt the testator could read. Thomas admitted he had never heard the testator read aloud from anything other than blueprints and specifications.
Freddie Rivers, a building supplier, testified he had done business with the testator for approximately five to six years. He testified that an ability to read was necessary to understand the specifications and blueprints in order to know the information contained on those documents. He could not recall any instance in which the testator had actually demonstrated his ability to read.
After reviewing the evidence, the trial court found plaintiffs had proven beyond a reasonable doubt the testator could not read and was therefore unable to execute a statutory will pursuant to La.R.S. 9:2442. The court ordered the testament annulled and the order probating it and appointing defendant as executrix withdrawn.
Legal Principles
La.R.S. 9:2442 sets forth the form of a statutory will and requires the will be executed in the presence of a notary and two competent witnesses. The statute specifically provides this statutory will may be executed only by a person who knows how to sign his name and knows how to and is physically able to read. La.R.S. 9:2443 sets forth the form for executing a statutory will for those with sight impairment or who are illiterate. When this testament was executed in 1984, the statute provided the *840 will should be read aloud by the notary in the presence of the testator and three competent witnesses and the witnesses should follow the reading on copies of the will.
La.C.C.P. Article 2932 provides the plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In that event, defendants have the burden of proving the authenticity of the testament and its compliance with all of the formal requirements of the law.
Testamentary capacity is always presumed and the burden is on the party attacking the validity of the will to prove a lack of capacity at the time the will was executed. The ability to read has been properly classified as a matter of testamentary capacity for the purposes of determining the validity of a statutory will. There is a strong presumption of validity of testament and the validity of a will is to be upheld whenever possible. Succession of Norton, 451 So.2d 1203 (La.App. 5th Cir. 1984); Succession of Budwah, 441 So.2d 39 (La.App. 3d Cir.1983); Succession of Comeaux, 428 So.2d 1081 (La.App. 1st Cir. 1983); Succession of Dubos, 422 So.2d 444 (La.App. 4th Cir.1982), writ denied, 429 So.2d 132 (La.1983) and writ not considered, 429 So.2d 160 (La.1983) and Succession of Arnold, 375 So.2d 157 (La.App. 2d Cir.1979).
The purpose of the statutes prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud or deception and to afford a means of determining their authenticity and to prevent substitution of some other writing in place thereof. The formal requirements for the confection of a will under the terms of the statute are mandatory and essential to its validity. The primary distinction between the formal requirements of the wills executed pursuant to La.R.S. 9:2442 and 2443 in 1984 was the first required two witnesses whereas the second required three witnesses. The form provided for the illiterate contains protections to assure the testator's intent is incorporated in the will even though the testator cannot read it. It must be read aloud to him and others who are required to sign it must follow the reading of the will on copies provided to them. Succession of McKay v. Mount, 449 So.2d 189 (La.App. 3d Cir.1984); Succession of Littleton, 391 So.2d 944 (La.App. 2d Cir.1980) and, Howard v. Gunter, 215 So.2d 222 (La.App. 3d Cir.1968).
The determination of testamentary capacity is a factual question and the findings of the trial court are not to be disturbed unless manifestly erroneous. Succession of Jimmy Lee, 430 So.2d 1126 (La. App. 1st Cir.1983).
Validity of Testament
On appeal defendant argues the trial court erred in finding plaintiffs had proven beyond a reasonable doubt that the deceased could not read and thus could not make a will pursuant to La.R.S. 9:2442. After reviewing the evidence and the pertinent statutes, we find the trial court did not err in annulling the testament.
The testament at issue herein was executed by the testator pursuant to La.R.S. 9:2442 before two witnesses and a notary public. A reading of the statute clearly establishes that this particular testament may only be executed by a person who knows how to sign his name and is able to read. Thus, in order for the will executed by the testator to be valid, the testator must have been able to read since the formalities prescribed by La.R.S. 9:2443 were not followed.
The evidence adduced at trial established the testator could not read at the time the will was executed. The testimony of the testator's children and relatives indicated he had a very limited education, apparently not even completing the first grade. The testator had throughout his life asked others to read to him and had admitted to some of the witnesses that he could not read. The testator's wife admitted she had never heard the testator read aloud during their 20 year marriage and was unable to produce even one writing composed by the testator other than his signature. While the testator was able to sign his name on *841 checks, recognize certain names on mail, timesheets and telephone lists, he was apparently unable to do such other simple tasks as maintain his business records, write a complete check, read a menu or compose his own telephone list. The testator was able to utilize numbers and on occasion had recorded the numbers of hours worked by his employees on the timesheets prepared by his wife. However, the names of the employees were usually listed in the same order and there were not many employees on the list.
The only positive testimony as to the testator's ability to read was not conclusive and could have resulted from the testator's apparent embarrassment from being illiterate. The testator's business associates testified they merely assumed the testator could read, particularly because he had "read" blueprints and specifications. While there was some testimony that an ability to read would be necessary to understand blueprints and specifications which were used by testator in his contracting business, it was established these documents could be deciphered by the knowledge of common symbols which are used in the industry. The ability to understand and utilize numbers and symbols does not act to classify one as literate by any standard nor is ability to sign one's name evidence of the ability to read. Succession of Jimmy Lee, supra and Succession of Comeaux, supra.
Considering all this evidence, we find the trial court did not err in concluding plaintiffs had met their burden of proof that the testator was unable to read and, thus, did not err in annulling the will.
Defendant further argues the trial court erred in holding that an ability to read is required to make a valid will when it had been proven the proposed will had been read aloud to the testator and he knew the contents thereof when it was executed. This argument is without merit.
As noted above, the testator could not have executed a valid will pursuant to La. R.S. 9:2442 as he was unable to read. The fact that the will was read aloud to the testator by the notary and the testator allegedly knew the contents thereof when he signed the testament would not act to cure the procedural defect created by the testator's inability to read. To hold otherwise would effectively eliminate the need for the statutory will prescribed by La.R.S. 9:2443 which was specifically created by the Legislature for those persons who are unable to read and contains formalities which are precautionary measures to insure the testator's intent is incorporated in the will. Further, the will is not valid under La.R.S. 9:2443 even though it was read aloud to the testator as the other formalities mandated by that statute were not followed.
Assessment of Costs
Finally, defendant argues the trial court erred in assessing court costs to her individually when her actions were done in her capacity as testamentary executrix of the succession and thus the costs of the litigation should have been assessed against the estate.
It is well-established the succession representative has a duty to defend the validity of the testator's last will and testament. Thus, as a general rule, the costs incurred in a will contest proceeding should be assessed to the mass of the succession rather than against the succession representative individually. Succession of Kite, 366 So.2d 602 (La.App. 3d Cir.1978), writ denied, 369 So.2d 155 (La.1979) and Succession of Meier, 204 So.2d 793 (La.App. 4th Cir.1967).
However, there is some jurisprudence which indicates costs may be allocated to the succession representative, individually, when that representative has a significant personal interest in the outcome of the will contest. See Succession of Kelly, 305 So.2d 704 (La.App. 2d Cir.1974).
The record in this case does not detail what actual benefit, if any, would be obtained by the executrix personally if the will were maintained. Defendant would have received a lifetime usufruct under the will and while that lifetime usufruct would have had some value, there was not sufficient evidence presented at trial to support a conclusion that defendant's personal interest *842 in the outcome of the litigation overrode or was paramount to her legal obligation to defend the will as the succession representative. In the absence of such evidence, we find the trial court erred in assessing defendant with the costs of the litigation. Accordingly, we amend the judgment of the trial court to assess the costs of this matter to the succession.
Decree
For the reasons stated herein, we AFFIRM the judgment of the trial court in favor of plaintiffs insofar as it annulled the last will and testament of the testator. The judgment of the trial court is hereby AMENDED to assess costs of the litigation, including costs of this appeal, against the succession.