596 So.2d 411 (1992)
SUCCESSION OF Charles H. DORAND.
No. 91-CA-1081.
Court of Appeal of Louisiana, Fourth Circuit.
March 26, 1992.
Writ Denied June 26, 1992.
Pickering, Cotogno, Delsa & Dunn, Claudia Sue Dunn, New Orleans, for appellants Gay Dorand Zehner and Karl D. Dorand.
Daniel T. McKearan, Jr., Harahan, for appellees Leo A. Guenther and Hall Townsend.
Before LOBRANO and ARMSTRONG, JJ., and BRYAN, J. Pro Tem.
TREVOR G. BRYAN, Judge Pro Tem.
The issue in this appeal is whether the District Judge erred when he discredited the trial testimony of the petitioners and their expert witness and held that a will as originally probated was valid. We affirm.
Mr. Charles Dorand died on June 7, 1990 at age 90. Mr. Dorand had one child, Charles D. Dorand, who predeceased him. Mr. Charles D. Dorand who died in 1971 had three children, Keith C. Dorand, Karl D. Dorand and Gay Dorand Zehner. Keith Dorand died in 1987 leaving two sons, Brandon and Brian Dorand. Karl D. Dorand had a son, Scott Dorand, at the time of Mr. Charles Dorand's death.
In May 1990, Mr. Daniel T. McKearan, Jr. (counsel for the defendants) met with the deceased and prepared a statutory will under La.R.S. 9:2442 which was executed on May 8, 1990. Under the terms of this will, Mr. Dorand divided his estate into five parts. Karl and Gay Dorand his grandchildren *412 each received one-fifth of the estate; Brian, Brandon, and Scott Dorand his great-grandchildren also each received one-fifth. Mr. Dorand left a special legacy of his dog and one-fourth of his cash to his housekeeper.
Appellants, Gay Dorand Zehner and Karl Dorand, contest the validity of that will, claiming that the deceased was sight-impaired and, therefore, did not have the required testamentary capacity to execute the will under the statute. The appellants produced an olographic will dated December 3, 1970 in which Mr. Dorand left his estate equally to his three grandchildren.
The statutory will dated May 8, 1990 was probated on June 19, 1990 in Orleans Parish. On July 9, 1990 the appellants filed a Petition to Annul the Probated Testament and presented the olographic will for probate. After hearing the opponents' case, as well as the testimony presented by the proponents of the statutory will, the District Court granted the proponents' motion for directed verdict. The District Court held that the statutory will prepared by Mr. McKearan was valid because the opponents did not meet their burden of proving that the deceased lacked testamentary capacity.
La.R.S. 9:2442 provides in part:
A statutory will may be executed under this Section only by a person who knows how to sign his name and who knows how to and is physically able to read.
If the testator lacks the ability to read, then La.R.S. 9:2443 is the correct statute under which he must execute a statutory will.
During the deceased's last years of life he had substantial medical problems including eye problems. He had cataract surgeries in 1985 and 1987.
The appellants allege that the deceased lacked testamentary capacity because he could not read, and, therefore, La.R.S. 9:2443 is the correct statute to apply. La. R.S. 9:2443 sets forth the method to execute a statutory will for one who is sight-impaired. Because the statutory will in this case was not perfected under La.R.S. 9:2443, the appellants urge that the will is invalid. The parties agree that the statutory will met the requirements of La.R.S. 9:2442 but disagree as to that statute's applicability.
"Testamentary capacity is always presumed and the burden is on the party attacking the validity of the will to prove a lack of capacity at the time the will was executed." Atkins v. Roberts, 561 So.2d 837, 839 (La.App. 2nd Cir.1990). The ability to read is considered a matter of testamentary capacity to determine the validity of a statutory will. Id.
A party alleging lack of testamentary capacity must overcome the presumption of capacity by clear and convincing evidencea burden of proof requiring more than a "preponderance of the evidence" but less than "beyond a reasonable doubt." Succession of Lyons, 452 So.2d 1161, 1164-1165 (La.1984). See also Succession of Cahn, 522 So.2d 1160, 1162 (La.App. 4th Cir.), writ denied 523 So.2d 1339 (La.1988). The existence of the disputed fact must be highly probable, that is, much more probable than its non-existence. Id.; Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976). [But see, Succession of Mack, 535 So.2d 461, 465 (La.App. 3rd. Cir.1988), writ denied, 539 So.2d 633 (La. 1989), suggesting that the proper standard of proof when the deceased's ability to read is questioned and a statutory will is involved is the more stringent proof of "beyond a reasonable doubt."] Nevertheless, reviewing the record in this case, we find that the opponents of the will failed to satisfy the lesser burden of proving by clear and convincing evidence that the deceased lacked capacity to execute a statutory will under La.R.S. 9:2442.
At trial the appellants presented the expert testimony of Dr. Robert Cangelosi, the ophthalmologist who performed the second cataract surgery on Mr. Dorand. Based on his surgery and treatment of the deceased, Dr. Cangelosi testified that in his opinion the deceased could not have read the will prepared by Mr. McKearan. His conclusion was based on his diagnosis of Mr. Dorand at his last visit in April 1989. At that time, Dr. Cangelosi found that Mr. *413 Dorand had "finger count vision" in his right eye and no light perception in his left eye, meaning he was totally or legally blind in that eye. In his opinion, it would be impossible for Mr. Dorand's vision to improve from then until when the will was executed. Dr. Cangelosi did admit that "finger count vision" would enable someone with a magnifying aid to read one or two letters of a word at a time. Each appellant also testified that over the last five years Mr. Dorand had difficulty lighting his own cigarettes and reading menus in restaurants. They further testified that Mr. Dorand could not see or read. The District Judge rejected Dr. Cangelosi's testimony, calling it "not credible". The District Court further stated that Dr. Cangelosi's testimony was confused and that he could not recall certain specific facts about his treatment of the deceased. The District Court also rejected the individual testimony of the appellants, calling it apprehensive, disturbed, and biased.
Testamentary capacity is a question of fact; therefore, the findings of the District Court are not to be disturbed unless manifestly erroneous. Atkins, 561 So.2d at 389.
Because the Trial Court is present to personally observe the testimony and evidence presented at trial, its findings of fact must be accorded great weight. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). In this case the District Judge's findings of fact are clearly stated. The appellants did not present sufficient testimony to carry their burden of proof as opponents of the will. Indeed, the trial judge specifically commented on the absence of evidence presented by the opponents of the will from disinterested witnessesneighbors, friends, or other relativeswho would be able to verify the opponents' claim that Mr. Dorand himself often declared he was blind. The trier of fact simply did not believe the witnesses on behalf of appellants, and we are not at liberty to second guess him.
Accordingly, we find no error in the Trial Court's decision granting a directed verdict in favor of the appellees. Therefore, the deceased's will, previously probated, was properly perfected under La.R.S. 9:2442, and the decision of the lower court is affirmed. All costs of this appeal are to be borne by appellants.
AFFIRMED.