COX, J.
This appeal arises from the First Judicial District Court, Caddo Parish, Louisiana. A jury found Hanh Williams ("Ms. Williams") breached her fiduciary duty as trustee of the Fred L. Houston Inter Vivos Trust ("Trust") and executrix of Fred Houston's ("Mr. Houston") estate ("Estate"). The jury charged Ms. Williams with $1.1 million in damages for breach of duty to the Trust and determined she was liable to the Estate for $460,605. Ms. Williams has appealed the jury's verdict. For the following reasons, we affirm.
FACTS
Mr. Houston was the widower of Eleanor Houston. Eleanor was the only wife of Mr. Houston, and he had no children. Eleanor Houston died in 2002, leaving a life insurance policy payable to Mr. Houston. Mr. Houston took the life insurance policy to Jefferson Pilot in Shreveport, Louisiana. Ms. Williams assisted Mr. Houston in collecting the proceeds of the life insurance policy. Over time, Ms. Williams became involved in all of Mr. Houston's financial affairs, including managing oil and gas interests.
Mr. Houston gave Ms. Williams his power of attorney on September 2, 2003. On August 3, 2005, Mr. Houston formed the Trust and designated Ms. Williams as the trustee. Most of Mr. Houston's assets were placed into the Trust. The Trust would terminate if either Mr. Houston or Ms. Williams died. Under the terms of the Trust, Ms. Williams was to be compensated a "base compensation of 50% of all revenue received by the Trust from Samson Contour Energy E & P, LLC, or its successor in interest, as payment or partial payment of that working interest[.]"
Mr. Houston had an oil, gas, and mineral lease with Tenneco Oil Co. in DeSoto Parish, Louisiana, which was placed into the Trust. On April 21, 2006, George Olsen, Jr. ("Mr. Olsen"), offered to buy the DeSoto Parish mineral lease for $32,000. Mr. Houston transferred the mineral lease to Mr. Olsen for $35,000. Mr. Olsen stated he and Ms. Williams were former business *842 associates and partners. Mr. Olsen also stated that he initially agreed to compensate Ms. Williams with a "finder's fee" or "commission" of 10 percent of the consideration paid for the lease, but ultimately agreed to transfer 50 percent of the mineral lease to Ms. Williams for $14,000.[1] Mr. Olsen stated Ms. Williams had concerns that the documents of the transaction would show acts of self-dealing by her, as the trustee.
Ms. Williams stated that she did not agree with the transfer of the mineral lease, and she negotiated with Mr. Olsen to try to recover the lease interest for Mr. Houston. She stated that after buying the 50 percent interest from Mr. Olsen, she told Mr. Houston, and he did not want the interest back.
On January 31, 2006, Mr. Houston executed a will, which provided for the following:
(1) The sum of Five Thousand and No/100 ($5,000.00) Dollars to the town of Plain Dealing, Louisiana Cemetery Fund in memory of Leonard Collin Holland Houston, Faye Davis Houston and Gloria Houston Harris.
(2) The sum of Five Thousand and No/100 ($5,000.00) Dollars to the Northwest Louisiana Humane Society in care of Yvonne Mullinax, P.O. Box 52442, Shreveport, Louisiana 71135.
(3) One Princess style ring purchased in Thailand formerly belonging to Eleanor Holly Houston to go to Gloria Gail Breedlove.
(4) The sum of Ten Thousand and No/100 ($10,000.00) Dollars to the First United Methodist Church of Coushatta, Louisiana.
(5) One .22 Caliber semi automatic Ruger rifle to go to Grant M. Williams.
(6) A Collection of butterfly pens belonging to Eleanor Houston to go to Rachel L. Williams.
(7) The remainder of my estate is to be sold with the proceeds to go to the benefit of the Louisiana State University of Baton Rouge, Louisiana, School of Veterinary Medicine, for continued oncological research in memory of Amanda and Callie, beloved pets of Fred and Eleanor Houston. The independent Executor named hereinafter has the authority to accomplish this bequest through the establishment of a testamentary trust or a foundation in order to create a means for accomplishing the intent of this will. I do hereby appoint Hanh T. Williams as the independent Executor of my estate, with full seizin and without bond and fix her compensation for liquidating and administering the provisions of this will at 20% of the value of my estate less the seven (7) specific bequests indicated above.
Mr. Houston passed away in Caddo Parish, Louisiana, on September 23, 2008. Ms. Williams petitioned for probate on September 30, 2008, and the first six legacies under the will were distributed. LSU was made aware of its legacy through Lewis DeMoss, Mr. Olsen, and an anonymous letter.
LSU filed a motion seeking an interim accounting on July 1, 2009. On September 23, 2009, Ms. Williams filed the first accounting of the Estate, which included September 23, 2008, through September 15, 2009. On September 7, 2010, by agreement between the parties and trial court, Armand Roos ("Mr. Roos") was confirmed as Dative Independent Executor of the *843 succession. Mr. Roos believed assets were missing from the Estate accounting provided by Ms. Williams. Mr. Roos also believed Ms. Williams had improperly distributed estate assets to herself. Mr. Roos filed suit on October 31, 2011, against Ms. Williams asserting numerous causes of action for breach of fiduciary duty in her capacities as trustee and executrix. Several motions in limine were filed by both parties. A jury trial began on October 31, 2016.
During her time working with Mr. Houston, Ms. Williams kept a log of the work she performed for him. The following log entries were presented to the jury, showing hours billed by Ms. Williams:
12/20/2006, Christmas lunch with Fred, gifts, 2 hours .
12/25/2006, Christmas Day, Fred came to Christmas dinner with my family. Everyone was here. He seemed to enjoy talking to everyone. Got his mail, talked a little about Samson. 5 hours.
5/31/2006, Fred's Birthday, call him in the A.M. Melissa called back about Fred not doing well, need to go to doctor, called doctor's office. His next appointment on the 20th of June. Having problems with Melissa. 2 hours.
In addition to these log entries, the jury was presented with evidence that Ms. Williams charged the Estate for flowers for Mr. Houston's funeral, visiting Mr. Houston's grave on his birthday, and numerous alcoholic drinks and meals at restaurants. Ms. Williams explained to the jury that she charged the meals and drinks because it was cheaper to buy those when meeting with the attorney versus the hourly rate she would have been charged by the attorney. She stated that she met with the attorney in regard to business with Mr. Houston. As to the other charges and entries into the log, Ms. Williams explained that Mr. Houston preferred to reimburse her for expenses and he wanted her to keep up with the time. She stated these were things Mr. Houston insisted on paying for while he was alive.
The jury also heard testimony from the accountants of both parties, explaining how and why transactions were attributed to Ms. Williams. Two daughters, whose father is a current client of Ms. Williams, also testified before the jury. The first daughter, Ms. Rhodes, testified that Ms. Williams was in attendance at all family gatherings, her father refused to talk to her without Ms. Williams present, she was no longer in her father's will, and she had concerns about Ms. Williams. The second daughter, Ms. Crosslin, stated Ms. Rhodes never sees her father and does not have a relationship with him. Ms. Crosslin also testified that she takes care of her father, trusts Ms. Williams with both her father's and her own finances, and believes the present suit against Ms. Williams was brought about by unhappy family members of Mr. Houston.
The jury trial lasted 2½ weeks. After deliberating approximately 50 minutes, the jury rendered the present verdict against Ms. Williams by a vote of 9-3, awarding the damages listed above. Ms. Williams filed a motion for judgment notwithstanding the verdict or in the alternative, motion for a new trial, which were both denied. Ms. Williams then filed an appeal with this court. Ms. Williams requests this court remand the case for a new trial.
DISCUSSION
Mr. Roos's testimony and actions
In her first assignment of error, Ms. Williams argues the trial court committed error in allowing Mr. Roos to testify as the plaintiff's primary witness because he was also an attorney of record. After being appointed as the Independent *844 Executor, Mr. Roos, as a licensed attorney, elected to represent himself. He also enrolled the representation of other attorneys. Ms. Williams argues Mr. Roos shielded himself at his deposition by using attorney-client privilege. She argues that Mr. Roos's protected deposition, coupled with his ability to testify, deprived Ms. Williams of a fair trial.
Although Louisiana statutory law does not directly establish a right of self-representation in civil cases, Louisiana jurisprudence firmly establishes this right. Dixon v. Shuford , 28,138 (La. App. 2 Cir. 4/3/96), 671 So.2d 1213. The right of self-representation is provided for statutorily under federal law. 28 U.S.C. § 1654.
Rule 3.7 of the Louisiana Rules of Professional Conduct prohibits a lawyer from acting as an advocate in a trial in which the lawyer is likely to be called as a necessary witness except under certain circumstances. It provides in pertinent part:
(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
(1) The testimony relates to an uncontested issue;
(2) The testimony relates to the nature and value of legal services rendered in the case; or
(3) disqualification of the lawyer would work substantial hardship on the client.
(b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.
Rule 3.7 does not address the situation where the lawyer is representing himself. However, the Louisiana Supreme Court has agreed with other jurisdictions that Rule 3.7 does not apply to the situation where the lawyer is representing himself. Farrington v. Law Firm of Sessions, Fishman , 96-1486 (La. 2/25/97), 687 So.2d 997.
In the current case, Mr. Roos was appointed as Independent Dative Executor, and it was in this capacity that he brought suit against Ms. Williams. Mr. Roos is an attorney and elected to enroll himself as counsel in the case. The trial court allowed Mr. Roos to testify about his own actions and the allegations he made against Ms. Williams. Mr. Roos was not permitted to give an opinion because he was not qualified as an expert in the case.
Ms. Williams also argues Mr. Roos acted inappropriately by shaking hands with the trial judge and witnesses. She states that while in the presence of the jury, Mr. Roos shook hands with the judge after testifying. She also claims Mr. Roos shook hands with and clasped the shoulders of two of Ms. Williams's witnesses, attorneys Jerry Jones and Curtis Shelton. Ms. Williams moved for a mistrial, which was denied.
Mr. Roos argues the encounters with Jones and Shelton occurred in the hallway outside the courtroom. There are clear, glass doors leading into the hallway from the courtroom. Mr. Roos argues there is no evidence that the jury saw the handshakes through the glass. When the issue was raised at trial, the trial judge stated that he did not see the encounters in the hallway.
Mr. Roos concedes that he briefly shook hands with the trial judge when leaving the witness stand. When the issue was raised at trial, the trial judge stated that the handshake occurred while the jury was leaving the courtroom. He stated that only two or three members of the jury were still in the courtroom and that there was no evidence those jurors actually saw the encounter.
*845 Because a mistrial is a drastic remedy, it should be granted only when the error results in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent clear abuse of discretion. State v. Lawrence , 40,278 (La. App. 2 Cir. 3/15/06), 925 So.2d 727.
The record shows that the trial court did not abuse its discretion in denying Ms. Williams's motion for mistrial based on Mr. Roos's actions. The trial judge stated that based on the layout of the courtroom, the timing of the handshakes, and the fact that he did not see Mr. Roos shaking hands with witnesses through the glass door, that Ms. Williams's trial was not substantially prejudiced. Based on the complete trial record, we do not find there was a clear abuse of discretion.
Mr. Roos was permitted not only to represent himself, but also to testify about his own actions. The trial court did not abuse its discretion in denying Ms. Williams's motion for mistrial. This assignment of error lacks merit.
Significant interruptions
Ms. Williams argues that significant interruptions of the jury trial resulted in unfair prejudice. She states the start-stop nature of the trial, combined with weekends, was prejudicial to her defense.
The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done. La. C.C.P. art. 1631. The trial court has great discretion in directing the manner in which proceedings are conducted, and only upon a showing of a gross abuse of that discretion will the appellate court intervene. Youngblood v. Lee , 40,314 (La. App. 2 Cir. 11/2/05), 914 So.2d 1186, writ denied , 2006-0088 (La. 4/17/06), 926 So.2d 522.
Ms. Williams cites State v. Bowers, 42,390 (La. App. 2 Cir. 9/19/07), 965 So.2d 959, writ denied , 2007-2055 (La. 3/14/08), 977 So.2d 929, arguing it is an analogous factual circumstance in a criminal bench trial. We do not find Bowers to be in support of this argument.
The Bowers trial began on September 30, 2005, and was continued on November 14 and December 19, 2005, and January 30, and February 6, 24 and 28, 2006. The main explanation in the record for the widely spaced trial dates was that the judge was unavailable for other dates. In Bowers , this court stated, "While this procedure seems unusual, it does not strike us as an abuse of discretion. Notably, this was a bench trial, so inconvenience to the jury was not an issue, and any disruption in the flow of the evidence would seem more likely to prejudice the state than the defense." Before finding this assignment of error lacked merit, this court also noted that trial counsel did not object to the progress of the trial.
In the instant case, Ms. Williams raised this issue of interruptions before the trial and asked for a continuance. The continuance was denied. The following is a list of pertinent dates:
• 10/31/2011: Original petition for breach of duty (Mr. Roos subsequently filed two amended petitions)
• 5/8/2014: Answer to petition
• 5/13/2014: Order for trial by jury
• 10/7/2014: Jury trial set for 9/8/2015
• 8/21/2015: Motion to continue trial filed by Mr. Roos, stating he has been waiting on production of documents from Ms. Williams since March 2014.
• 8/31/2015: Opposition to continuance *846 • 9/2/2015: Motion to continue trial granted
• 5/12/2016: Jury trial reset for 10/31/2016
• 10/31/2016 (Monday): Jury selected
• 11/1/2016 (Tuesday): All Saints Day (Courthouse Closed)
• 11/2/2016 (Wednesday): Jury trial- Plaintiff's witnesses
• 11/3/2016 (Thursday): Jury trial- Plaintiff's witnesses (Half day of court because of annual memorial services)
• 11/4/2016 (Friday): Jury trial- Plaintiff's witnesses; 1st Defense witness
• 11/7/2016 (Monday): (Clerk Holiday- No court)
• 11/8/2016 (Tuesday): Election Day (Courthouse Closed)
• 11/9/2016 (Wednesday): 11/10/2016 (Thursday): Jury trial-defense witnesses
• 11/11/2016 (Friday): Veterans Day (Courthouse Closed)
• 11/14/2016 (Monday): Jury trial- Defense witness
• 11/15/2016 (Tuesday): Jury trial- closing statements; jury deliberation 12:14 p.m. - 1:05 p.m.
After the jury was selected, the trial took about six days, spanning over two weeks. The reason for the delay was multiple court holidays. The trial judge did not have the option of holding court on holidays. The plaintiff's case was presented first, before the delays. This argument could also be used by the plaintiff because of the delays between the presentation of his case and the conclusion of the trial. Arguably, the delays provided more time to the jury to process the defense's evidence as it was presented. The trial court has great discretion in conducting the proceedings. Based on the record, we find no abuse of that discretion, and this assignment of error lacks merit.
Evidence violations
Ms. Williams argues evidence was improperly allowed, in violation of La. C.E. arts. 402, 403, and 404. Specifically, she argues testimony and evidence from Mr. DeMoss and Ms. Rhodes about her current clients and other lawsuits should not have been allowed. Ms. Williams brought this argument before the trial court in a motion in limine. The trial court held that testimony about other clients and other lawsuits would be admissible only to the extent it showed a pattern. Further, the jury was instructed that Ms. Williams could be excused from liability pursuant to La. R.S. 9:2208 if she acted "honestly and reasonably."
The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. On appeal, the court must consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the party affected. If not, a reversal is not warranted. The determination is whether the error, when compared to the entire record, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove. La. C.E. art. 103 ; Johnson v. Tucker , 51,723 (La. App. 2 Cir. 11/15/17), 243 So.3d 1237, writs denied , 2017-2075, -2073 (La. 2/9/18), 236 So.3d 1262, 1266.
La. C.E. art. 404(B)(1) provides, in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *847 identity, absence of mistake or accident[.]
La. C.E. art. 404 applies to both civil and criminal trials. Generally, evidence of character, a particular character trait, or a prior or subsequent act, is inadmissible to prove that a person acted in conformity therewith on a particular occasion. La. C.E. art. 404(A) and (B) ; Williams v. Bd. of Sup'rs of Univ. of Louisiana Sys. , 48,763 (La. App. 2 Cir. 2/26/14), 135 So.3d 804, writ denied , 2014-0666 (La. 5/2/14), 138 So.3d 1249. However, La. C.E. art. 404(B) provides an exception to this general rule when the prior acts are used to show intent, plan, or the absence of a mistake or accident.
Mr. Roos introduced the testimony of Mr. DeMoss and Ms. Rhodes to show a planned pattern in Ms. Williams's work with her clients and that her actions were not accidental. Mr. DeMoss was hired by Ms. Williams as CPA for the Trust. Mr. DeMoss testified that he started an LLC with Ms. Williams. He stated he was named on the LLC paperwork and she was the silent partner.[2] Mr. DeMoss testified that Ms. Williams helped an 80-year-old widower with his finances. She told Mr. DeMoss that they could buy some of the widower's property for what Mr. DeMoss felt was well undervalued. Mr. DeMoss, Ms. Williams, and the LLC were ultimately sued by the widower and his children for lesion beyond moiety. Mr. DeMoss also said he questioned Ms. Williams's trustee fees and asked if that was the proper amount. He stated that after he questioned her, he was no longer asked to prepare the Trust tax returns.
Mr. DeMoss's testimony was used to show that Ms. Williams helped an elderly widower with his finances, then purchased property from him, and was ultimately involved in a lawsuit over the purchased property. This scenario is similar to the current case because Mr. Houston was also an elderly widower when Ms. Williams began working with him. Ms. Williams helped Mr. Houston with his finances, as well as served as trustee of his Trust, before purchasing a mineral interest, which was initially owned by the Trust.
Ms. Rhodes testified that Ms. Williams began working with her father, Mr. Madden, after his wife died. Ms. Rhodes stated that Ms. Williams became increasingly involved in her father's finances and was a "fixture" in his personal life as well. She testified that Ms. Williams was present at family gatherings, including Christmas and Thanksgiving. She stated that her father transferred his investments over to Ms. Williams. Ms. Rhodes stated that she attempted to discuss with her father the concerns she had regarding Ms. Williams's involvement in his life, but was not able to because her father insisted Ms. Williams be present anytime they spoke. Ms. Rhodes stated it was her understanding that she is no longer a part of his estate.
Ms. Williams was able to rebut the testimony of Ms. Rhodes with Mr. Madden's other daughter, Ms. Crosslin. Ms. Crosslin testified that she trusted Ms. Williams with her father's investments, as well as her own. She stated Ms. Williams had done a good job with their investments and helping to organize care for her father. Ms. Crosslin also stated that it was her *848 understanding that the instant case involved a will and that Mr. Houston "had some family that wasn't happy and all this came about because of that[.]"
Other acts are admissible to prove intent, plan, or lack of mistake. Because Ms. Williams argued she had a father-daughter relationship with Mr. Houston, her intentions in managing his finances was at issue. Both of these witnesses were used to demonstrate a pattern of relationships between Ms. Williams and elderly widowers, of whom she arguably took advantage. Under these circumstances, the trial court did not err in admitting the evidence of Ms. Williams's pattern of relationships and acts regarding elderly widowers. This assignment of error lacks merit.
Restricted testimony
Ms. Williams argues her own testimony was improperly restricted. Mr. Roos's counsel objected when Ms. Williams testified as to what Mr. Houston told her or the reason Mr. Houston took certain actions. Mr. Roos's counsel also objected to Ms. Williams's answers on cross-examination as unresponsive to the question. The following is an example of counsel's objection for a nonresponsive answer:
Q: Ms. Williams, can you show the jury or the Court the receipts for those expenses that you were reimbursing yourself the $30,000?
A: I don't have a receipt. I don't ask Fred to write a receipt when I give him cash, and I'm really not wanting to sit here and talk about his bad habits with prostitutes and substance habit, but you brought that up in the autopsy report. Now, do I want to go and ask him every time I give him cash or receipt, absolutely not.
MR. TABOR:[3] Your Honor --
THE WITNESS: He made it understood this was his money.
THE COURT: Hold on, Ms. Williams. Yes?
MR. TABOR: I haven't asked her about any of this substance abuse and prostitution.
THE WITNESS: You asked me -
THE COURT: Sustained. Hold on. Hold on. Wait a minute.
As stated above, the trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. Johnson, supra .
We have thoroughly read the trial transcript and find these objections by plaintiff's counsel were properly sustained as either hearsay under La. C.E. art. 803 or unresponsive to the question asked.
Ms. Williams further argues that because English is not her first language, the interruptions and rulings were unfair, frustrating, and an impediment to her ability to tell the jury what happened. According to Ms. Williams's testimony, she has been in the United States for over 30 years, graduated from Caddo Magnet High School, studied business at LSU in Shreveport, speaks five languages, is a Certified Financial Planner, and obtained the following professional licenses: insurance license, Louisiana Underwriter Training Council Fellow license, Chartered Life Insurance license, and securities licenses. Although English may not be Ms. Williams's first language, she has been successful in obtaining an education and professional licenses in the United States while using the English language. This assignment of error lacks merit.
*849 Jury verdict clearly erroneous
Ms. Williams argues the jury verdict was clearly erroneous based upon the evidence, particularly a finding of gross negligence. She argues that the testimony of her defense witnesses, who had personal knowledge of Mr. Houston and Ms. Williams, should not be trumped by the testimony of the plaintiff's witnesses, who had no personal knowledge of Mr. Houston.
A court of appeal's review of a trial court's or jury's finding of fact is well settled, as detailed by the Louisiana Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La. 1989) :
It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong[.]
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. (citations omitted)
The rule of law requiring an appellate court to exercise great restraint before upsetting a jury verdict is based, in part, on respect for the jury determination rendered by citizens chosen from the community who serve a valuable role in the judicial system. This policy requires an appellate court to presume a jury will not disregard its sworn duty and be improperly motivated, and will render a decision based on the evidence and the totality of the instructions provided by the judge. Adams v. Rhodia, Inc. , 2007-2110 (La. 5/21/08), 983 So.2d 798 ; Goldsby v. Blocker Through Dep't of Transp. & Dev. , 51,584 (La. App. 2 Cir. 9/27/17), 244 So.3d 703.
The jury heard ample testimony from witnesses from both sides regarding Ms. Williams's actions. Ms. Williams presented evidence from two accountants, Tom Chavanne and Larry Porter, each of whom performed work for either the Trust or Estate. The plaintiff offered testimony from Elizabeth Killough, an accountant who performed forensic accounting of the Trust and Estate.
*850 As discussed above, the plaintiff presented testimony from Mr. DeMoss and Ms. Rhodes regarding other clients and a consequential lawsuit. To counter that testimony, Ms. Williams offered testimony herself, as well as testimony from Ms. Crosslin.
Ms. Williams offered testimony herself of the father-daughter relationship she had with Mr. Houston. Jerry Jones, Fred Yost, and Pam Branagan also gave personal accounts of the relationship between Mr. Houston and Ms. Williams. Jerry Jones, the attorney who drafted the Trust, testified at trial:
I was concerned whether Ms. Williams was taking advantage of Mr. Houston or not, so I asked her to leave the room. I spent maybe an hour with him just one on one, and it became very clear to me that he had a very sincere fear that his own destructive habits were going to diminish his income[.] In his words, she's like the daughter I never had[.]
The jury listened to all of these testimonies, some of which were in conflict. The jury had a choice between two permissible views of the evidence. Either Ms. Williams breached her fiduciary duty to the degree of gross negligence, or she did not. The jury chose the view that she breached her duty. The jury is permitted to credit the testimony of Mr. Roos's witnesses over the testimony of Ms. Williams's witnesses. After reviewing the entire record, we conclude it was reasonable for the jury to find that Ms. Williams breached her fiduciary duty to the level of gross negligence.
Misleading testimony
Ms. Williams argues the misleading testimony of Mr. Roos's retained accountant, Ms. Killough, was significant enough to justify a mistrial. Ms. Killough is an accountant who was hired by Mr. Roos to perform forensic accounting of the Trust and Estate. At the trial, Ms. Killough stated that she did not receive Ms. Williams's personal bank account statements, which she stated would have been helpful. Later in the trial, Mr. Roos's counsel introduced Ms. Williams's bank account statement.
Ms. Williams moved for mistrial, arguing the testimony that Ms. Killough was not given the statements and the later production of the statements was prejudicial. The trial court denied the mistrial and stated, "She made a statement that was misrepresentation, that's not a grounds for mistrial because a witness gets on the stand and makes a misrepresentation is not grounds for mistrial[.]"
The court on its own motion, or on the motion of any party, after hearing, may grant a mistrial. La. C.C.P. art. 1631. Because a mistrial results in the discharge of one jury and the impaneling of another to try the case anew, it is a drastic remedy. Burks v. McKean , 559 So.2d 921 (La. App. 2 Cir. 1990), writ denied , 566 So.2d 398 (La. 1990). The trial judge is vested with broad discretion to grant a motion for mistrial where no other remedy would afford relief or where circumstances indicate that justice may not be done if the trial continues. This Court should not disturb the trial court's determination unless there is an abuse of discretion. Denton v. Vidrine , 2006-0141 (La. App. 1 Cir. 12/28/06), 951 So.2d 274, writ denied , 2007-0172 (La. 5/18/07), 957 So.2d 152.
The trial court did not err in refusing Ms. Williams's motion for mistrial. On cross-examination, Ms. Killough stated, "Oh, do you know what, I did see some, some statements that were bank accounts for her, I want to say I did now that I remember, but it was not helpful at all. It didn't change my report. It didn't show *851 any payments to Mr. Houston." Under the circumstances of this case, the trial court's denial of the mistrial was not an abuse of discretion.
Prescription of trust claims
Ms. Williams argues that all claims from the Trust prescribed and should not have been presented to the jury. She claims the breach of fiduciary duty is governed by the two- and three-year peremptive periods set forth in La. R.S. 9:2234.
La. R.S. 9:2234 provides, in pertinent part:
A. An action for damages by a beneficiary against a trustee for any act, omission, or breach of duty shall be brought within two years of the date that the trustee renders, by actual delivery or mail to the beneficiary, ... an accounting for the accounting period in which the alleged act, omission, or breach of duty arising out of the matters disclosed therein occurred. However, such actions shall in all events, even as to actions within two years of disclosure, be filed within three years of the date that the trustee renders an accounting for the accounting period in which the alleged act, omission, or breach of duty occurred.
B. Any action by a beneficiary against a trustee other than those described on Subsection A of this Section is prescribed by two years beginning from the date that the trustee renders his final account to the beneficiary.
The trust accounting is governed by La. R.S. 9:2088, which provides, in pertinent part:
A. A trustee is under a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust. If the trust is revocable, the trustee has a duty to account to the settlor only.
B. A trustee shall render to a beneficiary or his legal representative at least once a year a clear and accurate account covering his administration for the preceding year... Each annual account shall show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of trust property at the end of the year.
* * *
D. A written approval by a beneficiary or his legal representative of an account rendered by a trustee shall be conclusive against the beneficiary with respect to all matters disclosed in the account[.]
The two- and three-year periods of limitation provided for in La. R.S. 9:2234 are peremptive periods that are triggered by an accounting rendered and delivered by the trustee. The burden is on the trustee to show when he made an accounting sufficient to trigger the commencement of the time periods. Cook v. Cook , 2004-0422 (La. App. 4 Cir. 11/10/04), 888 So.2d 1061.
Ms. Williams and Mr. Chavanne, the Trust's accountant, both testified that they met with Mr. Houston to discuss the Trust's transactions and bank statements. Ms. Williams also stated that tax returns were filed at the end of every year. Neither Ms. Williams nor Mr. Chavanne testified that Mr. Houston was given a copy of the accounting, as required by La. R.S. 9:2088. When the issue of prescription was brought before the trial court, the trial court stated prescription had not begun to run because the requirement of actual delivery or delivery by mail means it has to be in writing. The trial court further stated, "[I] read numerous cases dealing with this and what I've heard does not amount to an accounting. Sitting down and *852 going over his accounts, periodically going over expenditures and stuff that I heard, that doesn't amount to an accounting to me under the statute. It doesn't."
La. R.S. 9:2088 requires an annual accounting be personally given or mailed to the beneficiary of the trust. The annual accounting is required to show in detail all cash receipts and disbursements, all receipts and deliveries of trust property, and must set forth a list of all items of trust property. This accounting must be delivered to the beneficiary, not simply discussed. The testimony of financial discussions and going over bank statements with Mr. Houston does not show that an accounting of all cash transactions, trust property transactions, and list of all trust property was delivered to Mr. Houston. We find no error in the trial court's reasoning and conclude that Mr. Roos's claims against Ms. Williams for breach of fiduciary duty as trustee are not prescribed.
DeSoto Parish property
Ms. Williams argues that despite a pretrial ruling on the issues pending in DeSoto Parish, improper evidence and testimony was still presented to the jury resulting in undue prejudice. The transfer of a mineral interest in DeSoto Parish was declared a nullity because Mr. Houston transferred the property in his individual capacity, when the mineral interest had already been placed into the Trust. J-W Operating Co. v. Olsen , 48,756 (La. App. 2 Cir. 1/15/14), 130 So.3d 1017, writ denied , 2014-0313 (La. 4/11/14), 137 So.3d 1217.
In ruling on the motion in limine regarding the DeSoto Parish suit, the trial court stated:
I understand that the transfer is a nullity, because of his - him executing, I guess, the transfer in his individual capacity. He's trying to show that she did some acts, including this sale, that these acts were a breach of her duty. That has not been litigated. That, in fact, was indicated by the judge in the wrong court.
* * *
But it was not addressed, and the Court would not even address it. The Court said you're in the wrong place, so I'm going to give the plaintiffs a chance to address whether or not she breached her duty. It was never addressed in DeSoto Parish[.]
An individual trustee shall not directly or indirectly buy or sell property for the trust from or to himself or his relative, employer, employee, partner, or other business associate, unless the trust instrument provides otherwise, or unless specifically authorized by a court of competent jurisdiction, after a contradictory hearing. La. R.S. 9:2085. A violation by a trustee of a duty he owes to a beneficiary as trustee is a breach of trust. La. R.S. 9:2081.
As stated previously, the trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed absent a clear abuse of that discretion. Johnson, supra.
Mr. Roos alleged Ms. Williams breached her fiduciary duty to the Trust. Part of that allegation included evidence of self-dealing. Mr. Roos presented evidence that Mr. Houston sold a mineral interest to Mr. DeMoss. Ms. Williams agreed to buy half of the interest from Mr. DeMoss. Ms. Williams was then able to testify that she bought the interest in order to put it back in the Trust.
The purpose of this testimony was not to declare the sale a nullity, which had already occurred in DeSoto Parish, but to show evidence of a breach of fiduciary duty. The trial court was within its discretion by allowing the evidence to be presented. The ruling was not erroneous. The evidence was relevant to Mr. Roos's case *853 in alleging Ms. Williams was engaging in self-dealing. The testimony regarding the DeSoto Parish property was in accordance with the motion in limine ruling. This assignment lacks merit.
Improper jury charges
Ms. Williams argues that improper charges to the jury warrant a new trial. She claims there was confusion regarding the instructions on when to close a succession, whether there was a duty to file accountings with the court, and whether Ms. Williams had a heightened duty because of special skill or expertise.
Trial courts are given broad discretion in formulating jury instructions, and a trial court judgment should not be reversed so long as the charge correctly states the substance of the law. The trial court is responsible for reducing the possibility of confusing the jury and may exercise the right to decide what law is applicable and what law the trial court deems appropriate. The charge must correctly state the law and be based on evidence adduced at trial. Jeff Mercer, LLC v. State through Dep't of Transp. & Dev. , 51,371 (La. App. 2 Cir. 6/7/17), 222 So.3d 1017, writ denied , 2017-1442 (La. 12/5/17), 231 So.3d 625, cert. denied , --- U.S. ----, 138 S.Ct. 1566, 200 L.Ed.2d 746 (2018).
The relevant jury charges are as follows:
As a result of Ms. Williams' actions as executrix of the Estate of Fred L. Houston, Roos claims that:
1. She breached her fiduciary duty by failing to close the succession as soon as advisable.
2. She breached her fiduciary duty by failing to file accurate and complete accountings of the estate.
* * *
The trustee must exercise reasonable care and skill, considering the purposes, terms, distribution requirements, and other circumstances of the trust. A trustee who has special skills or expertise, or has held herself out as having special skills or expertise, has a duty to use those special skills or expertise.
A trustee has a duty to a beneficiary to keep and render clear and accurate accounts of the administration of the trust. A trustee shall render to the beneficiary or his legal representative at least once a year a clear and accurate account covering her administration for the preceding year. This annual account must show in detail all receipts and disbursements of cash and all receipts and deliveries of other trust property during the year, and shall set forth a list of all items of trust property at the end of the year.
* * *
A succession representative has a duty to close the succession as soon as advisable[.] An independent succession representative shall file an account on the application of any interested person or when ordered by the court.
We find no confusion in these instructions, whether read separately or in conjunction with the remainder of the instructions. The jury charge did not state the succession had to be closed within a particular time period. Ms. Williams admits that the trial court correctly recited the provision of La. C.C.P. art. 3197 concerning the duty to close a succession as soon as advisable . Mr. Roos's claim was worded in the same manner, "as soon as advisable." The fact that Mr. Roos's claim was labeled as a "fiduciary" duty, when Ms. Williams argues it should have been labeled as a "general" duty, does not rise to the level of jury confusion.
Ms. Williams argues it was an erroneous charge regarding the claims of Mr. Roos that Ms. Williams, as Independent Executrix *854 of the Estate, owed a fiduciary duty to file a complete and accurate accounting with the court. Again, Ms. Williams admits the trial court correctly stated the law regarding the duty to file an accounting. Mr. Roos claimed Ms. Williams failed to file the accounting. The jury was given the correct law to apply. It was up to the jury to apply the evidence to the law and decide whether or not Ms. Williams breached her duty. There is no confusion between the claim and law.
Ms. Williams also admits the trial court correctly recited La. R.S. 9:2090 in regards to special skill or expertise. She argues there was no evidence that she ever made any representations to Mr. Houston regarding any special skills or expertise.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written. La. C.C. art. 9. La. R.S. 9:2090(B) states, "A trustee who has special skills or expertise, or has held himself out as having special skills or expertise, has a duty to use those special skills or expertise." (Emphasis added.) The law is clear. Ms. Williams was not required to hold herself out as having a special skill in order to have a duty to use her special skills or expertise. The jury charge regarding special skill was not improper. This assignment of error lacks merit.
New trial or judgment notwithstanding the verdict
Ms. Williams argues the trial court erred by not granting a new trial or judgment notwithstanding the verdict. A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
La. C.C.P. art. 1972.
A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law. La. C.C.P. art. 1973. A new trial is mandated only upon a showing of jury misconduct which is of such a grievous nature as to preclude the impartial administration of justice. Otherwise, the granting of a new trial is left to the sound discretion of the trial court. Goldsby, supra.
The motion for a judgment notwithstanding the verdict ("JNOV") may be granted on the issue of liability or on the issue of damages or on both issues. La. C.C.P. art. 1811. A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes reasonable persons could not arrive at a contrary verdict. Goldsby, supra.
As already discussed, the verdict reached by the jury in this case was reasonable based on the evidence presented at trial. The evidence did not point so strongly in favor of Ms. Williams that a reasonable jury could not reach a different conclusion. The trial court did not abuse its discretion in denying the motion for a JNOV or new trial.
Unreasonable expenses and attorney fees
Ms. Williams argues the executor charges to the Estate with accompanying expenses and attorney fees were unreasonable. As noted above, Mr. Roos served as Independent Executor of the Estate, as well as an attorney in the litigation on behalf of the Estate.
*855 It has long been recognized in Louisiana law that an executor of a succession may obtain an attorney to aid in the carrying out of the executor's duties and to defend the succession against adverse claims made against it. Succession of Jenkins, 481 So.2d 607 (La. 1986). Courts have also recognized that the costs of such legal representation may be charged to the succession. Atkins v. Roberts, 561 So.2d 837 (La. App. 2 Cir. 1990). The courts have made the distinction, however, that where the legal representation is primarily for the personal benefit of the executor and not the estate, such fees may not be paid from the property of the succession. Succession of Haydel, 606 So.2d 42 (La. App. 4 Cir. 1992). Whether or not an attorney's work was for the benefit of the succession estate is a question of fact that cannot be set aside absent manifest error. In re Succession of Brazan , 07-566 (La. App. 5 Cir. 12/27/07), 975 So.2d 53.
La. C.C.P. art. 3351.1 states, in pertinent part:
B. Unless expressly stated in the testament appointing the succession representative, if the succession representative serves as an attorney for the succession or for the succession representative, the succession representative shall not receive compensation both as a succession representative and as an attorney for the succession or for the succession representative; however, the compensation of a succession representative shall be reduced by the amount of compensation received and which was attributable to the performance of the duties as attorney for the succession or for the succession representatives.
C. The provisions of Paragraphs A and B of this Article limiting compensation received by a succession representative may be waived upon written approval by the heirs and legatees of the decedent owning a two-thirds interest in the succession.
La. C.C.P. art. 3351 states, in pertinent part:
In the absence of a provision in the testament or an agreement between the parties, the administrator or executor shall be allowed a sum equal to two and one-half percent of the amount of the inventory as compensation for his services in administering the succession. The court may increase the compensation upon a proper showing that the usual commission is inadequate.
A provisional administrator or an administrator of a vacant succession shall be allowed fair and reasonable compensation by the court for his services.
The compensation of a succession representative shall be due upon the homologation of his final account. The court may allow an administrator or executor an advance upon his compensation at any time during the administration.
Mr. Roos was appointed executor of Mr. Houston's succession on September 17, 2010. Mr. Roos enrolled attorneys from the law firm of Wiener, Weiss, and Madison ("WWM"). The trial concluded on November 15, 2016. At the time the trial concluded, Mr. Roos, and his legal representation, had been involved in this litigation for just over six years. He brought this suit for the benefit of the succession, not for the benefit of himself individually.
When Mr. Roos was appointed, the trial court executed a joint motion and order, with the consent of Mr. Roos and Ms. Williams. It was agreed Mr. Roos would be compensated $365 per hour and his attorneys "shall be billed at the hourly rates customarily charged by WWM for services rendered with respect to succession matters[.]" Mr. Roos filed with the trial court notices of the intent to distribute *856 funds before any legal fees were ever paid. LSU is the universal legatee of Mr. Houston's Estate and did not oppose Mr. Roos's requests for payment. The trial court found the attorney fees to be reasonable. Having reviewed the extensive record in this matter, we find no abuse of discretion in the trial court's findings.
CONCLUSION
For these reasons, the jury verdict and judgment of the trial court are affirmed. Costs of this appeal are cast to appellant, Hanh Williams.
AFFIRMED.

Instead of having Ms. Williams pay 50% of the 35,000, Mr. Olsen still gave her a 10% "finder's fee" and reduced her cost to 40% of the 35,000 (35,000 x 0.4=14,000), which meant she paid $14,000 for her interest.

Mr. DeMoss stated the LLC was named HLM, LLC and that the "H" stood for Hanh. Ms. Williams confirmed she was involved in the LLC in the following exchange with the trial court:
THE COURT: Were you the H. in HLM?
MS. WILLIAMS: That's the name -
THE COURT: I'm asking you were you. Did that H. stand for Hahn?
MS. WILLIAMS: That's what he just said, yes.

Mr. Tabor is counsel for the Estate.