CUTRER, Judge.
The issue presented in this appeal is whether a testamentary bequest to a surviving wife is excessive and subject to a reduction.
Eddy Hoffpauir died August 21, 1978. He had been married twice. He first married Elia Credeur who predeceased him in *1168 1932. Of that marriage six children were born, plaintiffs herein. The second marriage in 1937 was to Effie Trahan, by whom three children were born. These children are not parties to this suit.
Eddy died testate bequeathing to his wife, Effie, one and one-half acres of land with improvements. This property was the separate property of Eddy subject to certain community claims asserted by Effie. Eddy bequeathed the remaining property, ten acres of land, to the surviving children.
On September 11, 1978, Effie Hoffpauir qualified as Executrix of the estate of Eddy Hoffpauir. She, as executrix, filed a petition to probate the will. The plaintiffs filed suit for reduction of the bequest to Effie. Effie was sued individually and not in her capacity as executrix. Effie, individually, answered denying that the bequest was excessive, and reconvened for the enhanced value of the house which emanated from improvements made on the house with community funds, for funeral expenses that she had paid, and for remuneration for care she had rendered to Eddy during his last illness.
After trial the trial judge rendered judgment dismissing plaintiffs' suit. He found that the bequest was excessive, but the trial court found that the excess was offset by the amount owed to Effie due to the enhancement of the value of the house plus funeral expenses. Plaintiffs appealed.
This court dismissed the suit without prejudice on the grounds that neither the principal demand nor the reconventional demand stated a cause of action.[1] The heirs had no cause of action against Effie individually. Their suit for reduction could have been brought only against Effie as executrix. Likewise, Effie’s reconventional demand could only have been brought in her capacity as executrix.
Following that dismissal, the plaintiffs again filed a petition seeking a reduction of the donation to Effie Hoffpauir. Effie, in her capacity as executrix of the succession, was made party-defendant.
Effie, in her representative capacity, answered the suit in the form of a general denial. No reconventional demand was filed by her in this second suit. A hearing was had wherein the parties introduced the note of evidence of the first trial as evidence to be considered in this second suit. After oral argument the trial court, according to the minutes of the court, rendered judgment for the reasons given in the first suit. The judgment in this second suit resulted in the following:
(1) Dismissal of the plaintiffs’ action for reduction;
(2) Judgment in favor of the defendant (as plaintiff in reconvention) against the plaintiffs (defendants in reconvention) “judicially recognizing the validity of her individual claim against [the decedent’s estate]” in the amount of $7,281.00, “$2,725.00 being the sum due to her as reimbursement for the funeral expenses ... and the sum of $4,566.00 owed to Effie ... for enhanced value of the separate property belonging to the deceased Eddy ...;”
(3) Dismissal of Effie’s reconventional demand “dealing with recompense for services rendered;” and
(4) Attorney’s fees in the amount of $5,700.00 to be taxed as costs against the estate of Eddy Hoffpauir.
Plaintiffs appealed. We reverse and render judgment.
This brings us to the determination of the issue before this court: Whether the bequest to Effie was excessive according to our law.
This action is available to the forced heirs, plaintiffs, under the provisions of LSA-C.C. articles 1502 and 1504.[2]
*1169 The procedure to be followed in determining whether the bequest to Effie should be reduced is delineated in C.C. art. 1505. That article provides that the disposable portion of a decedent’s estate is to be calculated upon the balance remaining after the debts owed by an estate are subtracted from the aggregate of the decedent’s property.
The disposable portion is that portion of a decedent’s estate which may be disposed of without impinging upon the heirs’ “legi-time” or forced portion, and LSA-C.C. art. 1493, as it was in effect at the time of Eddy’s death, set the disposable portion of his estate at one-third. Therefore, one-third of the difference between the value of Eddy’s estate, less the debts owed by it, is the amount Eddy could have disposed of without impinging upon his forced heirs’ legitime. With these principles in mind, we examine the facts of this case.
The trial court concluded that the total value of the estate was $23,983.00. This was the value placed upon the property by Fred G. Gossen, an appraiser whose detailed report was introduced into evidence by stipulation. This appraisal established the value of three tracts of land which totaled IIV2 acres; included were the IV2 acres and the improvements bequeathed to Effie. Another appraisal report was introduced into evidence, wherein Frank Sarver, an appraiser, estimated the value of the property at $27,500.00. The trial court accepted the evaluation of Gos-sen. We find no error in this determination. Having determined the total value of the estate left by decedent, we next must ascertain the debts due by the estate in order to arrive at a net value of the estate.
We shall first determine whether a debt is owed to Effie for one-half of the enhanced value of the house that was the separate property of Eddy but was improved with Eddy’s and Effie’s community funds.
The burden of proof required of a spouse claiming credit for one-half of the enhanced value of the other spouse’s separate estate is set forth in the case of Fontenot v. Fontenot, 339 So.2d 897, 901 (La.App. 3rd Cir.1976), writs den., 342 So.2d 217 (La.1977), where this court set forth the requirements of proof as follows:

“1) that the improvements did in fact enhance the property;

2) that the improvements were made with community funds or joint labor;

3) the value at the commencement and dissolution of the community; and

4) that the enhancement did not result in the ordinary course of events, i.e., a natural appreciation of immovable property, etc. ”
We have examined the record and have concluded that Effie has met her burden of proof in establishing the enhancement of value of the house.
The testimony of Effie and Dallas Hoff-pauir, one of the plaintiffs, established that Eddy purchased the house prior to the marriage to Effie for a price of approximately $20.00 to $25.00. He moved the house upon his land. The house consisted of two rooms, with a very small kitchen attached. No utilities of any kind were present. After Eddy and Effie married, extensive work was done improving the house in order to make it liveable. The existing rooms were enlarged and a living room, bedroom and bath were added. A water well was drilled and plumbing, electricity and sewerage facilities were installed. The dwelling, after improvements, contained 746 square feet of living space plus a porch on the front. The trial court found that the initial value of the house was negligible. We find no error in this conclusion.
The appraisal report of Fred Gossen, C.R.A., dated May 16, 1979, reflected a value of the house to be $9,133.00. Having found that the value of the house at the *1170 commencement of the marriage was “negligible,” the trial judge concluded that the enhanced value of the house was equal to its appraisal value of $9,133.00. Applying LSA-C.C. art. 2408 (which was in effect at the time of Eddy’s death), the trial court found the estate was indebted to Effie for one-half of the enhanced value of the house, or $4,566.50. We find no error in this finding by the trial court.
This amount represents an indebtedness to Effie by the estate payable in the forthcoming succession proceedings. The trial court erred when it considered this indebtedness to Effie as an offset to the amount of excessiveness of the bequest to Effie. We shall render judgment rectifying this error.
Another indebtedness owed by the estate is funeral expenses which had been paid by Effie, personally. The total indebtedness for the funeral was $2,725.00. Of this amount Effie stated that she borrowed $1,500.00 which was paid on the bill. The remainder was paid from other sources. The indebtedness by the estate to Effie is $1,500.00 and shall be considered as a debt payable in the forthcoming succession proceedings.
The next indebtedness to be considered is the attorney’s fees owed by the estate. At the beginning of the first trial the attorneys stipulated that “the attorney fees for handling of the estate, including the defense of the lawsuit,” would be in the amount of $4,000.00 plus $250.00 expenses.
It was also agreed “that if the attack on the will is successful by the six (6) forced heirs of the first marriage, the attorney representing those forced heirs, if the reduction is made will be entitled to reasonable attorney fees to be set by the Court _” These stipulations were re-entered into evidence in this suit along with the remaining transcript of the trial testimony. The trial court, in its judgment in this case, set the attorney’s fees for the counsel for the estate at $5,700.00 which included the $4,250.00 as stipulated plus $1,200.00 for the first appeal and $250.00 for the work in the second case. No fees were set for plaintiffs’ counsel as they were unsuccessful in the trial court. We feel that the trial court erred in this regard.
To the extent that attorney assistance was rendered to Effie individually in the first suit with no benefit to the estate, it was error to charge such an expense to the estate. We realize that the estate did benefit from the trial of the first case when the evidence of the first case was introduced as evidence in the second ease. As we consider these and other factors surrounding this situation, we recognize that the estate is indebted to the defense counsel for $4,250.00 attorney’s fees which include all work previously done or to be done in the closing of this estate and the handling of this suit through the appellate process.
As to attorney’s fees for plaintiff, according to the stipulation, we recognize that the estate owes plaintiffs’ counsel $1,500.00 as attorney's fees for work done in this suit. These attorney’s fees shall be payable in the forthcoming succession proceedings.
This completes our discussion of the indebtedness of the estate and by way of recapitulation we recognize the following indebtedness:
INDEBTEDNESS OF ESTATE
Due to Effie Hoffpauir for
one-half of the enhanced value of the house $ 4,566.50
Due Effie Hoffpauir for funeral expenses 1,500.00
Total attorney’s fees 5,700.00
Total indebtedness $11,766.50
These items of indebtedness are being set forth in order that we can determine the excessiveness of the bequest to Effie Hoffpauir. The trial judge erred in rendering judgment wherein he utilized the indebtedness owed to Effie Hoffpauir to offset the excessive bequest.
We now proceed with the computation in order to determine the issue of this case of whether the bequest to Effie was excessive.
*1171 Gross Value of Estate $23,983.00
Less Indebtedness 11.766.50
Active Mass of Estate 12.216.50
Disposable Portion ('/⅛ of $12,216.50) $ 4,072.17
The value of the bequest to Effie was $11,383.00; this bequest is clearly excessive and shall be reduced to $4,072.17. We shall reverse the judgment of the trial court and render judgment. We shall also remand the suit for further proceedings.
For these reasons the judgment of the trial court is reversed and set aside.
IT IS ORDERED that judgment is hereby rendered in favor of the plaintiffs and against Effie Hoffpauir as executrix of the Succession of Eddy Hoffpauir. The testamentary bequest to Effie Hoffpauir is excessive and is hereby reduced to the value of $4,072.17, the disposable portion;
IT IS FURTHER ORDERED that the suit is remanded for further proceedings in accordance with the views expressed herein and according to law.
The defendant-appellee is to pay all costs of the trial court and for this appeal.
REVERSED AND RENDERED; REMANDED.

. Succession of Eddy Hoffpauir, 411 So.2d 714 (La.App. 3rd Cir.1982).

. LSA-C.C. art. 1502 (as it read at the time of Eddy’s death) provides:
“Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.”
LSA-C.C. art. 1504 provides:
*1169 "On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.”