606 So.2d 42 (1992)
SUCCESSION OF Adam R. HAYDEL, Sr.
No. 91-CA-2325.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1992.
*43 Vallerie Oxner, Poindexter & Oxner, New Orleans, for appellant.
Edmond R. Eberle, New Orleans, for appellees.
Before LOBRANO, JONES and WALTZER, JJ.
WALTZER, Judge.
This action began with a presentment of a Tableau of Distribution to the trial court for approval of certain payments from the estate of Adam Haydel, Sr. A contradictory hearing was held concerning some of the distributions and a motion to remove the executrix, Cecilia Robert. The trial judge overruled the motion to remove the executrix and approved all but two of the distributions from the tableau. The distribution at issue in this appeal is a partial payment to Ms. Vallerie Oxner for attorney fees in the amount of fifty thousand ($50,000) dollars. [1] The trial judge lowered that amount, and authorized a partial payment of only twenty thousand ($20,000) dollars. The executrix now appeals that decision, arguing that the fifty thousand, as originally listed in the Tableau of Distribution, should be reinstated.[2] This Court is being called upon to determine whether the advance in attorney fees should be increased. We affirm the trial court's judgment and remand this case to the trial court for the specific purpose to determine the amount of attorney fees owed to Ms. Vallerie Oxner by the Succession of Adam Haydel, Sr.
This will has been in probate for ten years. The decedent, Adam Haydel, Sr., died on September 19, 1981. His surviving spouse, Clara Simon Haydel, opened his succession and submitted his will for probate. On August 19, 1982, Cecilia Haydel Robert, the daughter of Adam and Clara, was confirmed as executrix. Cecilia Robert then hired an attorney, Ms. Vallerie Oxner, to help carry out her duties as executrix.[3]
Adam Haydel, Sr. was married twice, first to Thelma Richard from whom he divorced in 1942, and second to Clara Simon who was his wife at the time of his death and who now survives him. The decedent had three children from his first marriage, Theresa Haydel Roques, Rosemary Haydel Gueringer, and Thelma Haydel Hart. Decedent had two children from his second marriage, Cecilia Haydel Robert and Adam Haydel Jr. All of his children now survive him.
Before their marriage, Adam Haydel and Clara Simon entered into a marriage contract on February 16, 1942 wherein they renounced the community of acquets and gains and agreed to be separate in property.
On December 21, 1979 Adam Haydel, Sr. executed his will and on December 29, 1979 he executed a "Matrimonial Agreement" *44 attempting to nullify the marriage contract from thirty years earlier.[4] The December 21, 1979 will leaves one-third (1/3) of Mr. Haydel's estate to his wife Clara Simon Haydel and the rest to his five children in five equal trusts, with the children to receive only the income from the trust property during their lives and the grandchildren to receive the trust property upon the children's deaths.
There has been much litigation regarding this succession over the last ten years. The three children from the first marriage have petitioned several times for the removal of Cecilia Robert as executrix. Cecilia Robert and her mother Clara have argued time and time again that the 1942 marriage contract was invalid. The trial judge has ordered on several occasions for various meetings between the parties and for appraisals and marketing of estate property, many of which have not been carried out. Much of the more recent litigation has been concerned with the validity of the 1942 marriage contract between Adam and Clara Haydel. In 1987, the three children from the first marriage challenged a descriptive list proposed by the executrix which listed the property from the decedent's second marriage as community property. On September 16, 1987 the trial court held that the 1942 marriage contract was valid, and that the portion of Adam Haydel's estate acquired during 1942 and 1979 was separate property. This Court upheld that judgment. Succession of Adam Haydel, Sr., 529 So.2d 856 (La. App. 4th Cir.1988); reh. den., (Sept. 14, 1988). The executrix then applied for writs to the Louisiana Supreme Court, which were denied. Succession of Haydel, 533 So.2d 363 (La.1988). Clara Simon Haydel, the second wife, then filed a petition to have that judgment annulled. That petition was dismissed by the trial court and this Court upheld the trial court's judgment on May 30, 1991 in an unpublished opinion. Haydel v. Succession of Haydel, 581 So.2d 409 (La.App. 4th Cir.1991). In addition to these actions, the Internal Revenue Service initiated proceedings in U.S. Tax Court due to the nonpayment of estate taxes by the succession for several years. In tax court, the executrix repeated her argument that the 1942 marriage contract was invalid. The U.S. Tax Court agreed with this Court and the trial court, ruling that the marriage contract for separate property was valid.
The action giving rise to the appeal now before us began with a presentment of a Tableau of Distribution to the trial court for approval of certain payments from the estate. The three children from the first marriage again took the opportunity to petition for the removal of Cecilia Robert as executrix. The trial court denied their motion and approved almost all the payments listed in the tableau. However, the trial judge reduced the payment to attorney Ms. Vallerie Oxner from fifty thousand ($50,000) to twenty thousand ($20,000) dollars, stating that she was "not entirely satisfied that all of those charges are attributable to the Succession of Adam Haydel." The trial court did make clear that the twenty thousand ($20,000) dollars authorized did not discharge the entire debt to Ms. Oxner, but was only a partial payment of the outstanding bill which had accumulated over the past ten years. On appeal, the children of the first marriage withdrew their opposition to the appointed executrix and to the Tableau of Distribution. The executrix now asks this Court to increase the award by the trial court, since there is no longer any opposition to the Tableau of Distribution as originally filed.
Louisiana law has long recognized that an executor or an administrator of a succession may obtain an attorney to aid in the carrying out of the executor's duties and to defend the succession against adverse claims made against it. Succession of Jenkins, 481 So.2d 607 (La.1986); reh. den., (Feb. 21, 1986); Succession of Demarest, 418 So.2d 1368 (La.App. 4th Cir. *45 1982); writ den., 422 So.2d 158 (La.1982). Furthermore, the costs of such legal representation may be charged to the succession. Atkins v. Roberts, 561 So.2d 837 (La.App. 2 Cir.1990); Succession of Hoffpauir, 443 So.2d 1166 (La.App. 3 Cir.1983). However, Louisiana law also adopts the principle that where the legal representation is primarily for the personal benefit of the executor and not the estate, such fees may not be paid from the property of the succession. Where the executor has an individual and special interest which she contests to protect against others, the succession shall not be responsible for the legal costs incurred. Osterland v. Gates, 400 So.2d 653 (La.1981); Atkins v. Roberts, 561 So.2d 837 (La.App. 2 Cir.1990); Succession of Kelly, 305 So.2d 704 (La.App. 2 Cir.1974). This Court thus would have to determine to which extent Ms. Oxner's work was attributable to representing the interest of the succession or for the personal benefit of Cecilia Robert.
At the trial court hearing, Ms. Oxner introduced her bill, which consisted of twenty pages of charges beginning in 1986 up to the trial hearing in 1991. Ms. Oxner claims that her representation has actually extended over nine and one-half (9½) years. The total for these charges up to the time of the filing of the Tableau of Distribution was over one hundred and twenty-five thousand ($125,000) dollars. Ms. Oxner testified at the hearing, during which she described the nature of some of the work for which the succession was being billed. It is clear to this Court, as stated by Ms. Oxner and acknowledged by the attorney for the children formerly opposing the Tableau of Distribution, that much of the work was for the benefit of the succession. The succession estate consisted of numerous pieces of real estate, and Ms. Oxner explained that much time and effort was spent in preparing the descriptive list, obtaining appraisal values, preparing estate tax returns, and other functions necessary in probating a succession. However, in her testimony, Ms. Oxner admitted that a significant part of her work included the executrix's attempts to have the 1942 marriage contract declared invalid. Ms. Oxner explained that the descriptive list she helped create listed much of the property as community property. When asked by opposing counsel why she listed the property as such, Ms. Oxner replied that she was following the obvious intent of the decedent. She stated that she advised her client, Cecilia Robert, the executrix, to list the property as community. Ms. Oxner further testified that while most of the litigation in tax court involved disputes over the valuations of estate property, part of the litigation concerned the validity of the 1942 marital agreement. Ms. Oxner stated that it was better for the succession to argue that property acquired during Adam Haydel's second marriage was community and save the expense of having that property taxed as separate than have to try to have that money returned if the Louisiana Supreme Court ruled that the property was in fact community.
After a review of the record, this Court finds it impossible to determine how much work was performed challenging the 1942 marriage contract for separate property.[5] Nor is it possible for us to know the true motives in challenging the marriage contract. It is therefore extremely difficult to determine whether Ms. Oxner was doing work for Cecilia Robert as executor or for Cecilia Robert personally.
What is certain to this Court is that the trial judge was not convinced that the entire amount of legal fees charged to the succession was for the benefit of the succession. Whether or not Ms. Oxner's work was for the benefit of the succession estate is a question of fact. Louisiana law is well settled that great deference must be given to the trial court in its determination of fact. Such a determination cannot be set aside absent manifest error. Rossell v. ESCO, 549 So.2d 840 (La.1989); on remand, *46 558 So.2d 1360 (La.App. 4th Cir. 1990); writ den., 561 So.2d 105 (La.1990). We find no manifest error with the trial court's decision. However, the trial judge made it clear that the twenty thousand dollars she authorized was only a partial payment. Furthermore, the parties have reached several agreements concerning the succession and attorney fees. Counsel for the children of the first marriage moved to dismiss their appeal and withdrew their objections to the appeal of Cecilia Robert. This Court is therefore remanding this case to the trial court in order to determine the amount of attorney fees that should be charged to the succession.
For the foregoing reasons, the judgment of the trial court awarding twenty thousand dollars ($20,000) of attorney fees as partial payment is affirmed, and it is ordered that this case be remanded for the specific purpose of determining the amount of attorney fees owed to Ms. Vallerie Oxner by the Succession of Adam Haydel, Sr.
AFFIRMED AND REMANDED WITH ORDER.
NOTES
[1] The other distribution not authorized by the trial judge was a payment to a specified legacy known as The Sisters of the Holy Family. The denial of that distribution by the trial court was not appealed.
[2] Two appeals were initially filed in this Court. The three children from the decedent's first marriage appealed the trial court's denial of their motion to remove Cecilia Robert as executrix. That appeal has been settled, leaving this Court with the sole issue of the distribution of attorney fees to Ms. Oxner. In their motion to voluntarily dismiss their appeal, the three children also agreed to withdraw all objections to the Tableau of Distribution as originally presented to the trial court.

The executrix then motioned this Court to enter a judgment reversing the trial court and approving the Tableau of Distribution as originally filed based upon the withdrawal of objections by the children from the decedent's first marriage. This Court denies that motion and decides this case based upon the appellant's brief, the record and transcripts now before this Court, and appellant's oral arguments.
[3] Ms. Robert and Ms. Oxner agreed that she would be paid an hourly rate for services performed.
[4] The "Matrimonial Agreement" stated that the 1942 marriage contract should be void because it was not executed in proper form. The 1979 document then went on to state that if the 1942 marriage contract was found valid, that a community of acquets and gains should begin on January 1, 1980.
[5] The list of charges presented to the trial court indicates only that the work performed was for the Succession of Adam Haydel. Furthermore, when asked about specific charges, Ms. Oxner could not recall whether they were for the contesting of the 1942 marriage contract or some other issue.