Judgment rendered February 26, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,061-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUCCESSION OF
CHARLES EDWARD WEED

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 629,580

Honorable Michael A. Pitman, Judge

* * * * *

| | |
|---|---|
| THE PESNELL LAW FIRM, APLC<br>By: W. Alan Pesnell<br>    J. Whitney Pesnell | Counsel for Appellant,<br>The Pesnell Law<br>Firm, APLC |
| MEDLIN & LAFARGUE, LLP<br>By: Norman Irion Lafargue | Counsel for Appellee,<br>John Charles Weed |

* * * * *

Before STEPHENS, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This civil appeal arises from the First Judicial District Court, Parish of Caddo, the Honorable Michael A. Pitman presiding.  The Pesnell Law Firm, the firm representing the succession of Charles Edward Weed, appeals the trial court's ruling about attorney fees, expenses, costs, and expert witness fees.  Appellee, John Charles Weed, answered the appeal and assigned his own errors.  For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

At issue in this case is a determination of attorney fees in the succession of Charles Edward Weed ("Charles"), who died testate on December 18, 2020, in Shreveport, Louisiana.  On February 19, 2020, Charles executed his last will and testament before attorney Billy Pesnell ("Atty. Pesnell"), who was named executor in Charles' will.  Charles left his entire estate to his only two children, John Charles Weed ("John") and James Frank Weed ("Jim"), in equal shares.  On April 6, 2021, a petition to probate Charles' will and for appointment of a testamentary executor was filed.  Atty. Pesnell filed three more pleadings related to the succession (prior to the attorney fees dispute); they are as follows:

> 1. A detailed descriptive list ("DDL") of assets, debts, and obligations. The DDL stated that, at the time of his death, Charles owned no immovable property, had assets totaling $244,477.93 and debts totaling $29,823.79, which included $21,599.50 in attorney fees and $964 in court costs (for filing fees and Westlaw research) related to the administration of the succession.  The amount of debt less the attorney fees and costs was $7,260.29.
>
> 2. An order to approve and ratify the sale of Charles' automobile.  John took the car to Texas and sold it at a private sale without prior court authorization.
>
> 3. A petition to pay the estate's debts and charges.

There were 29 pages filed with the trial court before the subject fee dispute. On July 27, 2022, The Pesnell Law Firm ("the firm") filed a motion to fix and determine attorney fees (the "first fee request"). The firm stated that a dispute developed between it and the Weeds about the succession's attorney fees. The firm stated that the succession owed it $31,069.50, which included out-of-pocket expenses of $1,355 for Westlaw research, a Louisiana Office of Motor Vehicles duplicate registration, and a court filing fee. The firm charged $350/hour for Atty. Pesnell's work and $85/hour for the work performed by its paralegal, Debra N. Ervin ("Debra"). The motion stated that Atty. Pesnell waived any right to an executor's fee. The firm attached its time records related to the succession to its fee request.

John opposed the first fee request, claiming that his father had few assets and debts, making the succession simple and administration of it unnecessary. He highlighted the few pleadings that Atty. Pesnell filed and argued that the firm's fees were excessive and unreasonable. He claimed that many of the entries in the firm's time records showed an excessive amount of time expended on the services rendered.

On September 19, 2022, a hearing was held in which Atty. Pesnell testified that he graduated from NYU Law School in 1959 and was admitted to practice law in Louisiana in 1960. Atty. Pesnell stated that initially, he was not going to administer the succession. However, when Atty. Pesnell corresponded with Goldman Sachs, the bank that held Charles' brokerage account, it wanted him to qualify as executor. Thus, he probated the will. Atty. Pesnell testified that, early on, Jim and John had a dispute over certain estate assets, and he had to correspond with them about that.

2

Atty. Pesnell testified that John wanted to sell Charles' car to CarMax in Dallas, and he informed John that court authority was required to do so. Atty. Pesnell prepared a petition authorizing the sale and was waiting for John to tell him the price for the car before filing it. John sold the car without authorization, so Atty. Pesnell then drafted a petition to ratify the sale. He tried to get documentation of the sale from CarMax and John, but neither complied. Atty. Pesnell testified about a promissory note payable to Charles by Financial Resources, valued at about $600,000. He stated that as executor to the succession, he investigated the note to determine its status. Atty. Pesnell stated that Financial Resources was run by David DeBerardinis[1] and John and Jim believed that the note was worthless. He drafted a document for John and Jim to sign agreeing to indemnify him for any liability incurred from not pursuing the obligation on the note. Atty. Pesnell stated that he did not record the time he spent investigating the note.

John filed an application with the Louisiana State Bar Association ("LSBA") to arbitrate the succession's attorney fees, but Atty. Pesnell objected, on the grounds that it was premature. Atty. Pesnell testified that he attempted to negotiate a settlement of the attorney fees with the Weed brothers, which Jim accepted timely, but John did not. Atty. Pesnell stated that he had already completed additional work on the case before John returned the signed acceptance agreement, which was late and undated.

Atty. Pesnell testified that early on, Debra and John had an altercation over the phone. He said that John was "abusing" Debra, and she came to his

---

[1] DeBerardinis managed a Ponzi scheme, misrepresenting to his "investors" that he ran a complex and lucrative fuel trading business. In 2021, he pled guilty to wire fraud and was sentenced to 15 years' imprisonment.

office crying. Atty. Pesnell told Debra that he would handle the communication with John after that. He testified that he charged his $350/hour rate after that for any communication he had with John. The firm's time records showed that it billed the succession largely at its $85/hour rate from December 2020 until March 2021, after which it billed the succession at the rate of $350/hour. Atty. Pesnell believed the work he performed and rates he charged were reasonable and customary.

John testified that Atty. Pesnell permitted John's cousin, Christy Defriend ("Defriend"), to take possession of Charles' car and that he allowed the insurance on the vehicle to lapse. John stated that the car was damaged during a storm when it was with Defriend and uninsured. John claimed that Atty. Pesnell made an accounting error regarding the debt he owed his father's estate and how much he and Jim should each receive. The brothers straightened out the error between themselves. John stated that he did not bully Debra, but he did become frustrated with Atty. Pesnell for how long the administration of his father's succession was taking, which he expressed to her.

On October 11, 2022, the firm filed a document styled, "Executor's Motion to Allow Attorney Fees Incurred in Defending Administration of Succession" (the "second fee request"), in which it sought additional attorney fees and costs, in the amount of $23,556.30, to defend against John's claims. It stated that the legal representation was not for the executor's benefit and asked that the additional attorney fees and costs be assessed to John alone, as Jim did not oppose the first fee request. John opposed the second fee request; Jim did not.

4

In a post-trial brief, Atty. Pesnell stated that John and Jim agreed that Defriend could take possession of their father's vehicle because she wanted to purchase it. Atty. Pesnell also claimed that he sent an email to John, on December 24, 2020, telling him not to cancel any insurance on Charles' car as it was still an asset of the succession.

On December 20, 2022, the trial court denied the firm's fee requests, stating that the fees charged in the firm's first fee request were unreasonably high. The trial court said that the fees Atty. Pesnell sought in the second fee request were for the benefit of the executor and not the estate and were also unreasonably high. The court examined Rule 1.5(a) of the Rules of Professional Conduct (which concerns attorney fees) and addressed each factor found therein as follows:

1. The ultimate result obtained: the court said it had been two years since the death of Charles and his sons had not been placed in possession of the estate property. The parties insisted that the other was to blame for the delay.

2. The responsibility incurred: the court said that the executor's responsibility in administering a succession valued at under $250,000 should have been easy and routine.

3. The importance of the litigation: the court said the succession should have been simple to administer and the only litigation was over attorney fees.

4. The amount of money involved: the trial court said that the estate was valued at $244,477.93, Charles owned no immovable property, his debts totaled less than $7,300, and all the assets of the estate were collected, sold, or otherwise disposed.

5. The extent and character of the work involved: the court said that the work involved in the succession should not have been complex or difficult, aside from the "personality disputes" between John and Atty. Pesnell.

6. The legal knowledge, attainment, and skill of the attorneys: the trial court said that Atty. Pesnell testified that he graduated from NYU Law School in 1959, had been practicing law since

1960, and had the requisite knowledge and skill to administer a simple succession.

7. The number of appearances involved: the trial court pointed out that prior to the fee dispute, there were no court appearances in the matter.

8. The intricacies of the facts involved: the court stated that, other than the fee dispute, the facts involved in the succession should have been minimal. The court reiterated that, prior to the fee dispute, the entire suit record consisted of 29 pages.

9. The diligence and skill of counsel: the court said that Atty. Pesnell had the skill and diligence to administer a simple succession. The court stated that it reviewed Atty. Pesnell's time sheets and found an excessive amount of time spent on certain tasks, such as, on March 14-16, 2021, billing 10.5 hours at $350/hour to a draft a letter to John and Jim.

10. The court's own knowledge: the trial court stated that it reviewed succession proceedings daily and aside from the fee dispute, it found nothing unusual in the succession that required Atty. Pesnell to complete extraordinary work.

The trial court then urged the parties to mediate the fee dispute through the LSBA's Lawyer Fee Dispute Resolution Program. The court said that if the parties did not consent to mediation, it would appoint two independent attorneys with longstanding succession practices to review the record and provide a recommendation on what a reasonable fee was for the work performed for the benefit of the estate. The trial court signed a judgment to that effect on January 5, 2023. The firm filed an objection to mediation. The trial court communicated to the parties that mediation was not ordered but urged.

The firm then filed an application for rehearing, which the court denied following a hearing on February 27, 2023. The court, on its own motion, granted a motion for a new trial for the limited purpose of appointing experts to review the suit record and give a recommendation on

what was a reasonable fee given the facts presented. The court appointed attorneys Armand Roos ("Atty. Roos") and Walter F. Johnson, III ("Atty. Johnson"). The firm later filed a motion to allow them to call their own expert witness about the value of the legal services provided by the firm; the trial court signed an order to that effect.

At the new trial, Atty. Roos testified that he graduated from LSU Law School in 1975 and began practicing law that same year. A vast amount of his legal career was spent in successions and estate planning, and he was certified by the LSBA as a specialist in estate planning. He stated that his hourly rate was $435. Atty. Roos testified that Charles' estate was simple, with very few assets. He said that, looking at the time sheets submitted by the firm, the administration of the succession became more complicated due to the failure of the successors to get along with each other and Atty. Pesnell and his paralegal.

Atty. Roos said that it was clear from the record that one of the brothers was rude to Debra which "kind of set off a whole bad thing here." He said that Atty. Pesnell did not allow John to communicate with Debra again, so "things were done by him that normally would have been done with the paralegal, and that just escalated the time." Atty. Roos stated that his impression was that Debra was not completing any work on the succession after she and John quarreled. Atty. Roos also highlighted the calculation error that Atty. Pesnell made in determining each brother's portion of the estate, saying that it contributed to the mistrust between the Weed brothers and Atty. Pesnell.

7

Atty. Roos said that the issue of selling the car without court order required Atty. Pesnell to complete additional work. He testified that Atty. Pesnell tried to handle the succession without administration, but due to Goldman Sachs' stance on releasing the account funds, Atty. Pesnell decided that administration was necessary. Atty. Roos stated that he also considered that there was an unknown promissory note that Atty. Pesnell believed he should investigate to determine whether the asset could be recovered.

Atty. Roos submitted a report to the court in which he said that the highest reasonable fee for the work Atty. Pesnell provided was $15,000, plus out-of-pocket expenses. He said in his report that the administration of smaller estates, like the Weed estate, would usually result in an attorney fee between $2,000 and $3,500. However, due to the complication, disagreements, and correspondence between the firm and John, the fee grew dramatically. Atty. Roos said that his firm's minimum fee for handling a succession was $1,500 plus expenses.

Atty. Johnson testified that he began practicing law in 1975, more than half his work was in successions, and his hourly rate for that practice area was $250. Atty. Johnson submitted a report to the trial court in which he said that he found the Weed succession to be ordinary and not especially complicated. Atty. Johnson compared the duties of the executor to a succession and the succession attorney. He noted that the statutory fee for an executor is 2 ½ percent of the gross estate. Atty. Johnson found that much of the time Atty. Pesnell spent on the succession appeared to be in the role of executor rather than succession attorney, which created a difference in the total fees. Atty. Johnson concluded that in Atty. Pesnell's billing

8

statement, nearly every entry was excessive. Atty. Johnson said that he believed Atty. Pesnell to be a qualified attorney, but the time incurred in drafting pleadings in the succession would have been minimal for a well-seasoned attorney.

Atty. Johnson deduced that the fees for a succession attorney in Charles' succession would have been reasonable if in the range of $10,000. He said that the gross value of Charles' estate was $233,477.93, so the executor's fee would be $6,111.95. He added those figures together and found that the total attorney fee should have been $16,111.95 plus costs.

Atty. Johnson said that he considered when calculating the appropriate attorney fees the issues in the succession including the dispute between the Weed brothers, the dispute between John and Atty. Pesnell, the sale of Charles' car, the problem in obtaining the estate funds from Goldman Sachs, and Atty. Pesnell's calculation error. Atty. Johnson said that the succession would have been simple if not for those issues and the Weed brothers taking things into their own hands which Atty. Pesnell later had to rectify. He stated that, without the complications in the succession, the attorney fee would have been between $2,500 and $3,000. Atty. Johnson stated that Atty. Pesnell's hourly rate of $350 was reasonable, but several of the tasks performed by Atty. Pesnell were excessive, which included Atty. Pesnell not becoming an independent executor of the estate, which would have allowed him to act without court approval in many respects.

Attorney William Medlin ("Atty. Medlin"), John's expert witness, testified that he practiced law for 45 years and was certified with the LSBA in estate planning and administration. Atty. Medlin stated that his hourly

rate was $300, but he would reduce that rate when he believed the total amount billed was too high.

Atty. Medlin stated that the complications in this case were from personal interactions. He said he did not believe Atty. Pesnell could bill for that because "that's not legal stuff." He said that he found a succession which cost more than $5,000-$6,000 to administer to be a very high cost and that fees would rarely get to that amount. Atty. Medlin said that he was not concerned about John selling the car without court authority and that the laws regarding those matters were more lenient in Texas, where Charles' car was sold, than in Louisiana.

Atty. Medlin acknowledged that John brought on many of the complications, but that his actions did not warrant an award of attorney fees such as what the firm charged the succession. He said that a reasonable fee should have been between $4,000 and $5,000, including the filing fee. Atty. Medlin said that when handling a succession, he always used an independent administrator.

Atty. Medlin said that he found Atty. Pesnell to be intelligent and his hourly rate of $350 reasonable. He said that he did not know Atty. Pesnell to pad his bill. He said that Atty. Pesnell's actions regarding the succession were not unreasonable, but the amount of time he spent on those actions were. He gave the example that Atty. Pesnell charged 10 hours to probate a will, which he believed could have been accomplished in 1 hour. He also said that the DDL in Charles' succession was "basic," when it was usually the drafting of the list that was the most time-consuming task in any succession.

10

The parties stipulated that Atty. Pesnell was an expert in attorney fees in Caddo Parish, Louisiana, and in succession matters. They also stipulated that his testimony would be the same as the testimony he gave at the trial held on September 19, 2022.[2] The court took the matter under advisement.

On August 3, 2023, the trial court signed a judgment finding that the fees charged by the firm in its first fee request were unreasonably high. The court also found that the attorney fees and expenses sought in its second fee request were not for the benefit of the estate and were unreasonably high. The trial court stated that the highest reasonable amount that could be awarded to the firm for attorney fees for the benefit of the estate was $16,000 plus reasonable costs and expenses incurred for the benefit of the estate. The trial court ordered the succession to pay the firm that amount. The court also ordered that the succession pay Wiener, Weiss & Madison, APC, Atty. Roos' firm, and Atty. Johnson expert witness fees of $5,000 and $3,187.50, respectively.

In its written reasons for judgment, the trial court noted that the firm only provided the testimony of Atty. Pesnell, but did not call an independent expert or put on additional evidence, such as independent documentation to support its claim about the attorney fees the firm charged in the Weed succession. The trial court found the firm's evidence "self-generated and self-serving." The court contrasted Atty. Pesnell's testimony with that of Atty. Medlin, who said that Atty. Pesnell's rate was reasonable, but his time spent was not. The court said that its independent court-appointed experts,

_____

[2] Atty. Pesnell passed away about a month after the May 31, 2023, hearing.

Attys. Roos and Johnson, agreed that Atty. Pesnell's hourly rate of $350 was reasonable, but the time he spent on the succession was excessive.

The court found it significant that the court-appointed experts separately came to a similar valuation about what constituted a reasonable amount to charge for attorney fees, within $1,133 of each other. The court said the attorney fees for the administration of the succession were unreasonably high and the additional attorney fees for litigating the succession attorney fees were also unreasonably high and not for the benefit of the succession. The firm now appeals. John answered the appeal and assigned his own errors.

## DISCUSSION

*Appellant's Assignments of Error Nos. One and Two: the Second Fee Request*

The firm first complains that the trial court erred in finding that the second fee request was not for the benefit of the estate. It states that each case the court cited involved a succession representative that also had a personal interest in the case as an heir or legatee. The firm argues that Atty. Pesnell had no special interest here. It claims that its second fee request was related to its first fee request, which was necessary to liquidate the estate and get court approval. The firm contends that a hearing on the motions was required to get a judgment of possession. Appellant asks that this court reverse the trial court's ruling about its second fee request.

In the firm's second assignment of error, it argues that the trial court erred in dismissing its second fee request for being unreasonably high without assessment and analysis. Appellant adds that the trial court

considered its second application to fix attorney fees as separate from its first, which it complains the court should not have done.

John asserts that the attorney for the executor, who provided services primarily for the benefit of the executor and not the estate, should not be paid by the estate. He argues that the firm had an interest in the estate as a creditor concerned with how much it was paid for its services, and its pursuit of what the trial court determined were unreasonably high attorney fees benefited the firm and Atty. Pesnell. John contends that the primary beneficiary of the resolution of the fee dispute was the firm and not the estate. He maintains that he had every right to complain about the excessive attorney fees at issue and the estate should not be penalized for him prevailing in his claim.

John also argues that it does not matter if the attorney fees were unreasonably high because they were not for the benefit of the estate. He asks that this court affirm the trial court's ruling on the second fee request.

Estate debts are debts of the decedent and administration expenses. Debts of the decedent are obligations of the decedent or those that arise as a result of his death, such as the cost of his funeral and burial. Administration expenses are obligations incurred in the collection, preservation, management, and distribution of the estate of the decedent. La. C.C. art. 1415.

This court, in *In re Succession of Dysart*, 50,927, p. 18 (La. App. 2 Cir. 9/28/16), 206 So. 3d 357, 368 (citing *Succession of Haydel*, 606 So. 2d 42, 44-45 (La. App. 4 Cir. 1992)), said:

> Louisiana law has long recognized that an executor or an administrator of a succession may obtain an attorney to aid in

the carrying out of the executor's duties and to defend the succession against adverse claims made against it. Furthermore, the costs of such legal representation may be charged to the succession. However, Louisiana law also adopts the principle that where the legal representation is primarily for the personal benefit of the executor and not the estate, such fees may not be paid from the property of the succession. Where the executor has an individual and special interest which she contests to protect against others, the succession shall not be responsible for the legal costs incurred (internal citations omitted).

The trial court was required to determine to what extent Atty. Pesnell's work was attributable to representing the interests of the succession or was for the benefit of the firm. Whether Atty. Pesnell's work was for the benefit of the succession is a question of fact. Louisiana law is well settled that great deference must be given to the trial court in its determination of fact. Such a determination cannot be set aside absent manifest error. *Rosell v. ESCO,* 549 So. 2d 840 (La. 1989).

Appellant complains that the cases the trial court cited in finding that the firm's second fee request was for legal work that did not benefit the estate are distinguishable from the instant matter because those cases involved succession representatives that had a personal interest in their respective successions as an heir or legatee.[3] While Atty. Pesnell was not an heir or legatee to Charles' succession, he was the succession's executor and his firm represented the succession. It was, therefore, a creditor of the succession and had an interest in being paid for the services it rendered.

The substance of the firm's second fee request was for work performed for the sole purpose of litigating the succession's attorney fees,

---

[3] The trial court cited: *Atkins v. Roberts*, 561 So. 2d 837 (La. App. 2 Cir. 1990); *Succession of Mollere*, 19-414 (La. App. 5 Cir. 3/26/20), 296 So. 3d 642, *writ denied*, 20-00573 (La. 9/23/20), 301 So. 3d 1184; and *Succession of Haydel, supra.*

14

which was for the sole benefit of the executor and the firm and not the succession. The firm's second fee request was neither a debt incurred by Charles, nor was it an administration expense incurred in the collection, preservation, management, and distribution of his estate. A ruling finding otherwise will increase litigation about the appropriate amount of attorney fees to the detriment of even simple successions. We find no manifest error with the trial court's decision and that part of the trial court's ruling is affirmed.

Because this court is affirming the part of the trial court's judgment finding that the firm's second fee request was not for the benefit of the succession, it is unnecessary for this court to consider appellant's second assignment of error about whether the trial court erred in finding that the amount of the fee claimed in its second fee request was unreasonably high. That assignment of error is now moot.

*Appellee's Assignment of Error No. One: Amount of Attorney Fees*

In his first assignment of error, John claims that the trial court's judgment should be modified to decrease the amount of attorney fees awarded from $16,000 to $3,000. He contends that Atty. Medlin testified that the fees should be no more than $5,000; Atty. Johnson stated that the fees should be about $10,000, but he then made the mistake of adding an additional $6,000 for the executor's fees, not realizing that the executor's fees would be offset by the payment of attorney fees; and Atty. Roos testified that the $15,000 was reasonable but he also said that it was the highest fee that should be paid. Appellee points out that the firm made no

mention of Rule 1.5(a) of the Rules of Professional Conduct in either of their fee requests.

Appellant replied and stated that the trial court disregarded the parties' experts and considered the testimony of Attys. Johnson and Roos, their reports, and the fee guidelines under the Rules of Professional Conduct in its opinion. Appellant contends that the trial court's decision to accept the testimony of one witness over another cannot be manifestly erroneous and the court's conclusion was aligned with that of the experts it appointed.

Attorney fees are subject to review and control by the courts. *Abadie v. Markey*, 97-684 (La. App. 5 Cir. 3/11/98), 710 So. 2d 327. Regardless of the language of the statutory authorization for an award of attorney fees or the method employed by a trial court in making an award of attorney fees, courts may inquire as to the reasonableness of attorney fees as part of their prevailing, inherent authority to regulate the practice of law. *Richardson v. Parish of Jefferson*, 98-625 (La. App. 5 Cir. 2/10/99), 727 So. 2d 705, *writ denied*, 99-864 (La. 5/7/99), 740 So. 2d 1289. The factors to be considered in determining the reasonableness of attorney fees are: 1) the ultimate result obtained; 2) the responsibility incurred; 3) the importance of the litigation; 4) the amount of money involved; 5) the extent and character of the work performed; 6) the legal knowledge, attainment, and skill of the attorneys; 7) the number of appearances involved; 8) the intricacies of the facts involved; 9) the diligence and skill of counsel; and 10) the court's own knowledge. *Rivet v. State, Dept. of Transp. and Dev.*, 96-145 (La. 9/5/96), 680 So. 2d 1154; *In re Tutorship of the Prop. of Alicia St. John Huddleston*, 95-97 (La. App. 5 Cir. 4/25/95), 655 So. 2d 416.

The factors listed in *Rivet*, *supra*, are derived from Rule 1.5(a) of the Rules of Professional Conduct Rule, which states:

(A) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of a particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent.

A reasonable attorney fee is determined by the facts of an individual case. *Richardson v. Parish of Jefferson*, *supra*. In making awards of attorney fees, the trial court is vested with great discretion, the exercise of which will not be interfered with, except in a case of clear abuse. *Succession of Mollere*, *supra*.

We find that the trial court was reasonable in setting the attorney fees at $16,000. The court sought the assistance of two qualified expert witnesses to arrive at the $16,000 figure. Attys. Roos and Johnson were both admitted to the bar nearly 50 years prior to the instant matter, and both

attorneys handled many succession cases. Attys. Roos and Johnson found that Charles' succession was simple, including few assets and debts. They respectively acknowledged the contentious relationship between John and Jim, and John and Atty. Pesnell. They said that Atty. Pesnell handled matters that typically would have been managed by his paralegal, which increased the billable hours.

Both attorneys found Atty. Pesnell's rate to be reasonable, but the amount of time he spent on certain tasks was not reasonable, such as drafting the pleadings and communicating with John and Jim. We also mention the voluminous correspondence between the brothers and Atty. Pesnell. Much of that communication involved Atty. Pesnell asking John for information or attempting to clarify matters of which John complained.

John also instigated a lot of communication through phone calls and email, to which Atty. Pesnell was required to respond. The court also observes that in the communication between Atty. Pesnell and the Weeds, Jim's spouse, Lori, told Debra that she and Jim wanted to reach a resolution on the attorney fee matter as quickly as possible so that they did not have to "be involved with John Weed and his antics." Lori also said in the same email, "As you know from personal experience, it is exhausting, insulting and stressful having to continue conversations with him (John) regarding this estate." Jim emailed Debra and asked if he could settle the estate less a negotiated fee for Atty. Pesnell's work. Jim said that "95% of all the issues are with John, so I would like to get my [half] and get the hell out of this deal."

18

Attys. Roos and Johnson noted that Atty. Pesnell had to complete additional work to 1) ratify the sale of Charles' car, which John sold without the proper authority; 2) obtain estate funds from Goldman Sachs; 3) moderate disputes between John and Jim; 4) communicate repeatedly with John; and 5) investigate the unknown promissory note. Atty. Johnson pointed out that it would have been more reasonable for Atty. Pesnell to be appointed an independent executor, which would have authorized him to act without court approval to administer much of the succession. Both of the court's experts noted Atty. Pesnell's calculation error which intensified the misgivings John had about the firm. We also observe that the firm twice refused to mediate the attorney fees with the LSBA.

Looking at the factors the trial court and this court are required to consider, we find the following:

1) The ultimate result obtained: as the trial court noted Charles died more than two years before the trial in this simple succession. The Weed brothers had not yet been placed in possession of their father's estate more than two years after his death.

2) The responsibility incurred: this was a simple succession with few assets and debts; administering it should have been straightforward and rote.

3) The importance of the litigation: again, this was a simple succession and, as the trial court mentioned, the only litigation that occurred in the succession was about the attorney fees.

4) The amount of money involved: the assets of Charles' estate were valued at less than $250,000, and his debts (not including the attorney fees), amounted to less than $10,000. No assets remained that were not accounted for.

5) The extent and character of the work performed: as the trial court stated, this succession was simple and uncomplicated; it was largely the disputes between Atty. Pesnell and John, John's actions regarding Charles' automobile, Atty. Pesnell's

unnecessary time spent on certain succession matters, etc., that complicated the succession.

6) The legal knowledge, attainment, and skill of the attorneys: as an attorney practicing since 1960, Atty. Pesnell had the requisite knowledge and skill to administer a simple succession. Given his lengthy career and extensive practice in succession law, Atty. Pesnell should have been able to quickly and succinctly handle drafting and filing any necessary pleadings or manage any matters which required the expertise of a succession attorney in administering such an easy succession.

7) The number of appearances involved: prior to the litigation over attorney fees, there were no court appearances.

8) The intricacies of the facts involved: Charles' succession required minimal effort to administer due to it containing few assets and debts. It was only the litigation over attorney fees that complicated the succession.

9) The diligence and skill of counsel: a simple succession does not require an overabundance of skill or diligence for a succession attorney to manage.

10) The court's own knowledge: as the court stated, it handled succession proceedings daily, and it found nothing unusual about the succession that required Atty. Pesnell to do atypical labor.

This simple succession required additional work from Atty. Pesnell to address the concerns and actions of John, which included a considerable amount of communication to resolve. Issues between John and Jim, and John and Atty. Pesnell further complicated the succession and increased the hours billed by Atty. Pesnell. However, we agree with the trial court and the testimony of its expert witnesses that the number of hours the firm billed for the succession was too high. We note that the trial court reduced the firm's requested fee by nearly half after Attys. Roos and Johnson independently suggested a fee within $1,200 of each other. After reviewing the facts of this case, we cannot find that the trial court clearly abused its discretion by reducing the amount of attorney fees awarded to the firm. Consequently, we

will not interfere with the trial court's determination. The trial court's ruling reducing the firm's attorney fees to $16,000 is affirmed.

*Appellee's Assignments of Error Nos. Two, Three, and Four: Expenses, Expert Witness Fees, and Costs*

In his remaining assignments of error, John claims that the judgment should be modified to limit the award of reasonable costs and expenses to only those related to the succession; that the trial court's judgment assessing the expert witness fees to him should be reversed because it was inequitable, or, in the alternative, the expert witness fees should be taxed equally between the succession and the firm; and that the firm should be condemned to pay all other costs to the trial court and in this appeal.

The firm argues that the trial court has wide discretion to tax costs. It states that John gives little weight to the fact that the attorney fees were increased by his direct actions. The firm points out that the trial court selected the experts for a matter that was part of the succession proceedings. The firm asks this court to affirm the trial court's ruling about the witness fees and costs and tax John with the costs of the appeal.

The court may render judgment for costs, or any part thereof, against any party, as it may consider equitable. La. C.C.P. art. 1920. The allocation of court costs among the parties is a matter which is subject to the discretion of the trial court, and its allocation of those costs will not be disturbed absent evidence of an abuse of discretion. *Jackson v. Herring*, 48,019 (La. App. 2 Cir. 5/22/13), 114 So. 3d 1245, *writ denied*, 13-1452 (La. 9/27/13), 123 So. 3d 727.

21

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages, including attorney fees, for frivolous appeal or application for writs, and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable. La. C.C.P. art. 2164.

It was within the trial court's discretion to order the succession to pay the costs and expenses related to actions that the firm undertook which were for the benefit of the succession. In the firm's fee bill, it included "research" as the description for several billing entries. The firm also provided a summary from Westlaw about the charges connected to the Weed succession. We cannot say that the trial court abused its discretion in ordering the succession to pay the costs and expenses related to the succession, which were listed in the firm's first fee request as $1,355.

We do find, however, that the trial court abused its discretion in taxing the expert witness fees solely to the succession. The administration of Charles' simple succession garnered uncommonly high attorney fees due to Atty. Pesnell's calculation of time spent on the succession and John's communications and actions regarding the succession assets. The firm also twice refused mediation of the attorney fees. We also note that Jim did not join John in litigating the fees. We find it more equitable to tax the expert witness fees equally to the succession and to The Pesnell Law Firm. The part of the judgment ordering the succession to pay expert witness fees of $5,000 to Atty. Roos' firm, Wiener, Weiss & Madison, APC, and $3,187.50

22

to Atty. Johnson is amended so that the expert witness fees are taxed equally to each party.

This court likewise finds it equitable to tax the appellate costs equally between the parties.

**CONCLUSION**

For the foregoing reasons, the part of the judgment taxing the Succession of Charles Edward Weed with the payment of expert witness fees is amended to require the parties to equally share the expert witness fees.  It is hereby ordered that The Pesnell Law Firm reimburse the succession of Charles Edward Weed $2,500 within 30 days of this judgment, for half the expert witness fees the succession paid to Wiener, Weiss & Madison.   It is hereby ordered that The Pesnell Law Firm reimburse the succession of Charles Edward Weed $1,593.75 within 30 days of this judgment, for half the expert witness fees the succession paid to Mr. Walter F. Johnson, III.  In all other respects, the judgment is affirmed.  The costs of the appeal are assessed equally between the parties.

**AMENDED IN PART, AND, AS AMENDED, AFFIRMED.**